**GAY INVESTMENT COMPANY, Appellant,**

**v.**

**TEXAS TURNPIKE AUTHORITY et al.,**
**Appellees.**

**No. 18325.**

Court of Civil Appeals of Texas,
Dallas.

May 9, 1974.

Rehearing Denied May 30, 1974.

———◆———

James C. McCoy, Spafford, Gay & Whitham, Dallas, for appellant.

Joe H. Staley, Jr., Locke, Purnell, Boren, Laney & Neely, Dallas, Alex Bickley, City Atty., Leigh Bartlett, Asst. City Atty., Dallas, for appellees.

CLAUDE WILLIAMS, Chief Justice.

Gay Investment Company appeals from a take-nothing summary judgment in its action against the Texas Turnpike Authority in which it sought money damages for breach of a covenant.

The material antecedent facts may be summarized as follows. In 1956 the Texas Turnpike Authority, acting as a condemnor

of real property pursuant to Vernon's Tex.Rev.Civ.Stat.Ann. art. 6674v (Vernon 1969), condemned certain property owned by the Sylvan Apartment Corporation, such property to be used for construction of the Dallas-Fort Worth Turnpike. The parties to the suit entered into a settlement agreement and based thereon an agreed judgment was entered in the Dallas County Court at Law No. 2 in cause number 111766-b, Texas Turnpike Authority v. Sylvan Apartment Corporation. This judgment, entered on April 20, 1956, contained the following language:

> [T]he court further finds that the Texas Turnpike Authority and Sylvan Apartment Corporation have mutually stipulated that so long as Texas Turnpike Authority maintains and operates said Toll Road or Turnpike project, no access road to the Toll Road or Turnpike project will be constructed, maintained, operated or permitted from the lands and streets adjoining the lands condemned in this cause; provided, however, that such covenant shall not be grounds for any failure of consideration of such settlement agreement or for any reverter of title to Sylvan Apartment Corporation, but said covenant and agreement is to be performed by the Texas Turnpike Authority in mitigation of severance damages, and the remedy of Sylvan Apartment Corporation or its successors and assigns for failure of the Authority to perform any such covenant and agreement shall be limited to damages to said remaining property, and Defendant Sylvan Apartment Corporation and its successors and assigns . . . in the ownership of its remaining lands shall not be entitled to any passageway over or under such Turnpike project and said Defendant has waived such passageway.

Gay Investment Company, appellant herein, through a series of conveyances has become the owner of the property in question and of any and all rights that Sylvan Apartment Corporation had in the agreement contained in the judgment recited above.

The Dallas City Council determined in a 1967 resolution that access from a street adjacent to the previously condemned property to the turnpike was essential in order to facilitate a new post office facility. The city then entered into an agreement with the Texas Turnpike Authority for the construction of this access road. It was determined that the County of Dallas was the proper entity to acquire the necessary right-of-way from Sylvan to the Dallas-Fort Worth Turnpike and on April 20, 1970, a written offer was made to Gay Investment Company for acquisition of the necessary land and damages to the remainder. After negotiation Gay and the County of Dallas executed a contract to compensate Gay in full for the land described and taken but with the express reservation by Gay of any and all rights it might have against the Texas Turnpike Authority by virtue of the 1956 condemnation judgment. On December 23, 1970, Gay conveyed the necessary property for the access road under the threat of condemnation and received the stipulated compensation.

Thereafter, Gay Investment Company made a demand for additional compensation and damages upon the Texas Turnpike Authority based upon the 1956 covenant. This demand was denied; whereupon this action was brought to recover additional damages alleged to have been occasioned by the 1970 taking. The Texas Turnpike Authority answered and impleaded the City of Dallas. It contended that if any damages were properly recovered against the Texas Turnpike Authority it should be allowed to recover same from the City of Dallas. Both the Texas Turnpike Authority and the City of Dallas filed their motions for summary judgment and Gay Investment Company filed its partial motion for summary judgment for a judicial determination of liability but not for the amount of damages. Following a hearing the trial

court sustained the motions presented by Texas Turnpike Authority and the City of Dallas and denied the motion for partial summary judgment filed by Gay.

In its first three points of error appellant Gay Investment Company contends that the record shows as a matter of law that appellee Texas Turnpike Authority is liable for the breach of a valid agreement and therefore the trial court erred in granting appellees' motions for summary judgment.

Appellant concedes that its cause of action for damages depends entirely upon the validity of the 1956 agreement between the Texas Turnpike Authority and appellant's predecessor in title, Sylvan Apartment Corporation. The question squarely presented to us, therefore, is: Did the Texas Turnpike Authority possess legislative and constitutional authority in 1956 to enter into an agreement with Sylvan Apartment Corporation that in the future no access road to the toll road or turnpike project will be constructed, maintained, operated or permitted from lands and streets adjoining the land condemned at that time? We have concluded that such contract was invalid, as a matter of law, and for that reason the trial court correctly sustained the motions for summary judgment denying appellant any relief.

No principle of law is more firmly entrenched in Texas jurisprudence than that which proscribes a governmental agency clothed with power of condemnation from abdicating or delegating its legislative authority contrary to the public interest. Appellee Texas Turnpike Authority derives its existence and authority from Vernon's Tex.Rev.Civ.Stat.Ann. art. 6674v (Vernon 1969). Sections 5(h) and .8 of that statute expressly confer upon the Turnpike Authority the power and authority to acquire property by condemnation " . . . by purchase or otherwise, on such terms and conditions . . . as it may deem necessary for carrying out the provisions of this Act." Thus the Turnpike Authority was clothed with legislative power to condemn the property of the Sylvan Apartment Corporation in 1956 and to pay such owner of the property the value thereof as required by law. Being thus admittedly clothed with the legislative power to take property for the public benefit, such turnpike authority entered into an agreement with the Sylvan Apartment Corporation wherein the condemning authority agreed that so long as it maintains and operates the Dallas-Fort Worth Turnpike "no access road to the toll road or turnpike project will be constructed, maintained, operated or permitted from the lands and streets adjoining the lands condemned in this cause . . . . "

The obvious effect of this agreement is forever to preclude and estop the turnpike authority from constructing, maintaining, operating, or even permitting others to place an access road on the Dallas-Fort Worth Turnpike regardless of the public needs therefor, which might thereafter be established. Such action on the part of the condemning authority in 1956 was, in our opinion, contrary to the established constitutional, legislative and judicial mandate concerning delegation of legislative authority. Vernon's Ann.St.Tex.Const. art. I, § 17 expressly prohibits irrevocable or uncontrollable grants or special privileges or immunities. The Legislature of Texas granted to the Texas Turnpike Authority the express right and power to condemn property for the use of the toll road in question. Such delegation of authority was made subject to the constitutional prohibition against uncontrollable grant of special privileges and immunities.

The Texas Commission of Appeals in Bowers v. City of Taylor, Tex., 16 S.W.2d 520 (1929, holding approved), rehearing denied, Tex., 24 S.W.2d 816 (1930), considered a case involving a contract made between the City of Taylor and the Interna-

tional-Great Northern Railroad Company wherein the city, in consideration of the railroad company removing certain tracks across a street, would close another street across the right-of-way of the railroad for exclusive use of the railroad company for a period of fifteen years. The appellant, an owner of land adjacent to the affected right-of-way, sought an injunction to prevent the city from closing the street across the railroad company right-of-way and in the alternative prayed for damages by reason of such closing. The Commission of Appeals held the agreement to be invalid based upon the well-established principle of law that a city cannot, by contract or otherwise, surrender its governmental or legislative functions, and cannot legally enter into any contract which would embarrass or control its legislative powers and duties or which would amount to an abdication of its governmental function or of its police power. Citing numerous authorities from other states and from the United States Supreme Court the court concluded:

> The general rule deducible from the authorities is that the legislative power vested in municipal bodies is something which cannot be bartered away in such manner as to disable them from the performance of their public functions. [citing authorities].

In 1932 the Texas Commission of Appeals, in Nairn v. Bean, 121 Tex. 355, 48 S.W.2d 584 (opinion adopted), considered a contract which had been made by the State Highway Commission in which it had restricted the future location of a state highway. Subsequently, the Highway Commission was proposing to change the location of the highway and plaintiff sought to restrain that action. Citing *Bowers,* the court held that the State Highway Commission could not limit or abdicate its legislative powers in this manner.

In City of Crosbyton v. Texas-New Mexico Utilities Co., 157 S.W.2d 418 (Tex.Civ.App.—Amarillo 1942, writ ref'd w. o. m.), the court considered a contract between the city of Crosbyton and the utilities company relating to rates and property. The court struck down the agreement as being violative of the long-established rule of law. The court said:

> Functions such as the exercise of the police power by which it promotes or protects the general welfare, comfort and convenience of the people, maintains supervision and control over its own property, or enacts legislation under which the peace and good order of society is regulated, are governmental functions over which the governing body must retain exclusive control. These cannot be delegated nor bartered away and any effort to do so or any contract which has the effect of passing them to others or tying the city's hands so that it is impotent to change its policy in respect thereto is unconstitutional and void. [citing authorities].

To the same effect see Banker v. Jefferson County Water Control and Improvement Dist. No. One, 277 S.W.2d 130 (Tex. Civ.App.—Beaumont 1955, writ ref'd n. r. e.), and Farmers Branch v. Hawnco, Inc., 435 S.W.2d 288 (Tex.Civ.App.—Dallas 1968, writ ref'd, n. r. e.).

An analysis of the 1956 agreement makes it abundantly clear that such agreement was void and ineffective. The covenant that "no access road to the toll road or turnpike project will be constructed, maintained, operated, or permitted . . ." is unlimited as to time and completely disregards the future needs of the public. This is acutely illustrated by the fact that in 1967 this very need on the part of the public to have an access road onto the toll road at the point in question was determined. Moreover, the 1956 agreement is not limited to a restriction upon the turnpike authority from exercising the

power of eminent domain. It goes further and attempts to restrict the power of eminent domain held by other governmental entities as well. The agreement clearly constitutes an attempt on the part of the turnpike authority in 1956 to contract away a governmental function and as such it goes directly in the face of the established authorities cited above.

Appellant Gay Investment Company seeks to distinguish these authorities as being inapplicable to the facts of this case. It takes the position that the turnpike authority in 1956 did not bargain away its power to construct the access road because the agreement specifically provides that in the event the turnpike authority did breach the agreement that damages could be sought for such breach. We cannot agree that a provision for liquidated damages would breathe life into this invalid agreement. In *Bowers,* the parties not only sought an injunction but asked for damages. The court, in striking down the contract as being illegal, eliminated the question of damages. The agreement in question here likewise was void and ineffective so that no cause of action can be predicated thereon.

The summary judgment record before the trial court established that appellant Gay Investment Company was precluded from recovery against appellees, as a matter of law. The summary judgment was correct. Gibbs v. General Motors Corp., 450 S.W.2d 827 (Tex.1970).

Resolution of the question of invalidity of the contract renders it unnecessary to consider or discuss the remaining points advanced by appellant.

The judgment of the trial court is affirmed.

Affirmed.

GUITTARD, J., not sitting.