## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 1998-CA-01514-SCT

*OLD CANTON HILLS HOMEOWNERS ASSOCIATION, AN UNINCORPORATED ASSOCIATION*

*v.*

*MAYOR AND CITY COUNCIL OF THE CITY OF JACKSON, MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/20/1998 |
| TRIAL JUDGE: | HON. ERMEA JACKSON RUSSELL |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | CASSANDRA D. BURNEY SOUTHERN |
| ATTORNEYS FOR APPELLEES: | HEATHER PHILO WAGNER |
| | GAIL WRIGHT LOWERY |
| | ISAAC K. BYRD, JR. |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 10/21/1999 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 11/12/99 |

## EN BANC.

## PRATHER, CHIEF JUSTICE, FOR THE COURT:

### STATEMENT OF THE FACTS AND CASE

¶1. In October, 1996, Pear Orchard Partners ("Pear Orchard"), a land development partnership, filed zoning application # 3131, requesting that the City of Jackson ("the City") rezone approximately twenty-one acres out of a 150 acre parcel of property in Northeast Jackson known as the "Avery property." The application sought the rezoning of the property from a single-family residential and general commercial classification to a restricted commercial and limited commercial classification.

¶2. Old Canton Hills Homeowners Association ("Old Canton"), led by Dick Burney ("Burney") opposed this rezoning application, and Pear Orchard withdrew application # 3131 prior to any hearings before the City's Planning Board. On February 21, 1997, Pear Orchard filed application # 3131-A, seeking to develop the same twenty-one acres, but this time as a Planned Unit Development[1] ("PUD"). The Planning Board approved the proposed PUD during a June 25, 1997 meeting and recommended that the application be approved by the Jackson City Council, contingent upon the addition of a housing component. It was later established, however, that Pear Orchard had failed to give notice to two area homeowners, as required by law, and the City Council remanded the matter to the Planning Board for further proceedings.

¶3. Following the required notifications, the Planning Board considered Pear Orchard's application once

again on October 1, 1997. At this meeting, however, the Planning Board failed to reach a consensus, with two members voting to approve the proposed PUD, two voting to deny, and four members abstaining.

¶4. On November 4, 1997, Pear Orchard filed Second Amended Zoning Application # 3131-A, increasing the size of the proposed PUD from twenty-one to fifty acres. On December 4, 1997 the City's Site Plan Review Committee approved the site plan for the proposed PUD, contingent upon the completion of twenty-three requirements. On December, 10, 1997, the City Council conducted a public hearing at which the application was unanimously approved, contingent upon the twenty-three requirements set forth by the Site Plan Review Committee being met. Old Canton appealed to the Circuit Court of Hinds County, which affirmed the ruling of the City Council. Feeling aggrieved, Old Canton timely appealed to this Court.

>   **I. Whether the trial court should have reversed the decision of the City Council of the City of Jackson, Mississippi, to approve Second Amended Zoning Action Application #3131-A as arbitrary, unreasonable, capricious, and not "fairly debatable" where the City Council approved the zoning ordinance contingent upon twenty-three conditions precedent being met.**

¶5. Old Canton raises specific substantive and procedural objections to the rezoning in the present case, and this Court will address these objections prior to employing our customary "change or mistake" analysis to the rezoning issues herein.

¶6. On December 4, 1997, the City of Jackson Site Plan Review Committee approved Pear Orchard's proposed site plan, but this approval was made contingent upon the meeting of 23 conditions. Typical of these conditions were the first four requirements that:

>   1. A pedestrian circulation plan shall be incorporated into the revised site plan.
>
>   2. The revised site plan shall comply with all requirements of Article IX-A Planned Unit Development (PUD) District of the Zoning Ordinance.
>
>   3. The functional aspects of the project do not negatively impact surrounding land uses or the area's infrastructure capacity. The scale of proposed land uses may have to be revised or infrastructure improvements made to insure the project's infrastructure demands do not exceed capacity.
>
>   4. The covenants previously submitted by the petitioner shall be incorporated as much as possible into the final covenants and that the final covenants shall be approved by the city council. ...

Moreover, the Jackson City Council voted to approve second amended zoning application # 3131-A under the stipulation that each condition set forth by the Site Plan Review Committee be met. Old Canton notes that, in *Cloverleaf Mall, Ltd. v. Conerly*, 387 So.2d 736 (Miss. 1980), this Court quoted the statement of the circuit judge in that case that:

>   Rezoning subject to ". . . conditions, stipulations, and covenants in April 11, 1978, Planning Commission recommendation . . ." is illegal. "Contract zoning" is an unconstitutional bargaining away of municipal police power. Zoning is an exercise of the police power to serve the common good and general welfare. It is elementary that this legislative function may not be surrendered or curtailed by bargain or its exercise controlled by the considerations in the law of contract.

*Cloverleaf*, 387 So.2d at 738. There was no citation to authority for this proposition in *Cloverleaf*, and this Court declined to address the issues relating to contract zoning in that case. *Id.* Moreover, no other Mississippi cases mention "contract zoning," and it is thus apparent that the validity of contract zoning is an issue of first impression for this Court.

¶7. Some states have taken a strict view in opposition to the practice of contract zoning. In *Chung v. Sarasota County*, 686 So.2d 1358, 1359 (Fla. Dist.Ct.App.1996), a Florida appellate court stated that:

> 'Contract zoning' refers to an agreement between a property owner and a local government where the owner agrees to certain conditions in return for the government's rezoning or enforceable promise to rezone. James D. Lawlor, Annotation, Validity, Construction, & Effect of Agreement to Rezone, or Amendment to Zoning Ordinance, Creating Special Restrictions or Conditions Not Applicable to Other Property Similarly Zoned, 70 A.L.R.3d 125, 131 (1976). Contracts have no place in a zoning plan and a contract between a municipality and a property owner should not enter into the enactment or enforcement of zoning regulations....By binding itself to enact the requested ordinance (or not to amend the existing ordinance), the municipality bypasses the hearing phase of the legislative process. Roy P. Cookston & Burt Bruton, Zoning Law, 35 U.Miami L.Rev. 581, 589 n. 34 (1981).

¶8. While Florida has been among the states most stringent in prohibiting contract zoning, other states and commentators recognize that contract or "contingent"zoning may, in many cases, constitute an effective land use planning device. In Annexation Agreements - - Boundary Agreements: Walking a Fine Line Into the Future: A Map of the Dangers to the Unwary Land Use Traveller, 17 N. Ill. U. L. Rev. 377 (1997), Ronald S. Cope writes that:

> Some conditional rezoning may be in the public good, subservient to a comprehensive plan, in the best interest of the public health, safety and welfare and enacted in recognition of changing circumstances. Not all conditional rezoning is onerous, destructive or an abandonment of the power of the zoning agency nor does it stem from improper motives . . .

¶9. In Moving Toward the Bargaining Table: Contract Zoning, Development Agreements, and the Theoretical Foundations of Government Land Use Deals, 65 N.C. L. Rev. 957, 983-985 (1987), Judith Welch Wagner similarly concludes that:

> Other courts, including many of the more recent cases, have upheld contingent zoning in the face of charges of per se invalidity. ... Courts that reject the per se invalidity argument clearly have the better view. Ample statutory authority exists in the form of traditional zoning legislation that may be construed to support this novel regulatory device. The key question instead is whether such authority should be narrowly or broadly construed. Many states have traditionally opted for narrow construction of enabling legislation to ensure against unwarranted action by local governments, but the present trend is toward a more expansive view of local government powers and a more generous interpretive view. ...

(Footnotes omitted). In *Dacy v. Village of Ruidoso*, 845 P.2d 793, 796 (N.M. 1992), the Supreme Court of New Mexico distinguished between various forms of contract zoning, noting that:

> We agree that in most situations contract zoning is illegal. However, we do not subscribe to a per se rule against all forms of contract zoning, nor does our rationale rest on the "bargaining away" or

abrogation of the police power. ... A contract in which a municipality promises to zone property in a specified manner is illegal because, in making such a promise, a municipality preempts the power of the zoning authority to zone the property according to prescribed legislative procedures. ... By making a promise to zone before a zoning hearing occurs, a municipality denigrates the statutory process because it purports to commit itself to certain action before listening to the public's comments on that action.

¶10. The New Mexico Supreme Court accordingly concluded that:

The foregoing analysis implies that one form of contract zoning is legal: a unilateral contract in which a party makes a promise in return for a municipality's act of rezoning. In this situation, the municipality makes no promise and there is no enforceable contract until the municipality acts to rezone the property. ... Because the municipality does not commit itself to any specified action before the zoning hearing, it does not circumvent statutory procedures or compromise the rights of affected persons.

*Dacy*, 845 P.2d at 796. The New Mexico Supreme Court in *Dacy* thus concluded that contract zoning was only illegal in cases in which a municipality committed itself to rezone property in such a manner as to circumvent the notice and hearing process or to compromise the rights of affected persons. See also *Prock v. Town of Danville*, 655 N.E.2d 553 (Ind.Ct.App. 1995)(concluding that the City of Danville had not improperly contracted away its police power); *Sylvania Elec. Prods., Inc. v. City of Newton*, 344 Mass. 428, 183 N.E.2d 118 (Mass. 1962).

¶11. Moreover, *Dacy* raises serious doubt as to whether the agreement in the present case constitutes contract zoning at all. The New Mexico Supreme Court in *Dacy* noted that:

(C)onditional zoning is not contract zoning at all, because it does not involve a promise by either party. Rather, conditional zoning describes the situation in which a municipality rezones on condition that a landowner perform a certain act prior to, simultaneously with, or after the rezoning. ... The absence of an enforceable promise by either party distinguishes conditional zoning from contract zoning.

845 P.2d at 796. It is apparent that the present case does not involve an enforceable promise by the developers, in a contract sense. In the event that the developers fail to comply with the terms of the agreement, Jackson Director of Planning Nat Griffin indicated that the process would simply go back to "point zero," but there is no indication that the City of Jackson would have a breach of contract suit against the developers in such a situation.

¶12. Regardless of whether the zoning in the present case is best characterized as contingent or contract zoning, it is abundantly clear that the Jackson City Council was under no obligation to approve the rezoning at the December 10, 1997 meeting. The transcript of the City Council meeting demonstrates that all parties were given an opportunity to speak both in favor of and in opposition to the proposed development, and there is no indication that the hearing was a sham or mere formality. The record establishes that the City Council members were very familiar with the issues relating to this particular rezoning application, and there is no indication that the City Council unanimously supported the rezoning for any reason other than a genuine belief that the rezoning was in the best interests of the City.

¶13. The record further demonstrates that the conditions set forth by the site plan committee and adopted by the City Council are the sort of conditions which are inherent to any Planned Unit Development. 83

Am.Jur.2d Zoning and Planning § 497, at 394 (1992) defines a Planned Unit Development as follows:

> A planned unit development is a district in which a planned mix of residential, commercial, and even industrial uses is sanctioned subject to restrictions calculated to achieve compatible and efficient use of the land. ...

(footnote omitted). One of the purposes of a Planned Unit Development is to ensure that, once an area is zoned for a particular classification, the property is actually used in the manner previously agreed upon by the City and prospective developers. It should be readily apparent that the sort of contingencies agreed to by the Pear Orchard developers in the present case are fully consistent with the goals and purposes of the PUD land planning device.

¶14. The record supports a conclusion that, in the present case, the PUD served as a helpful tool in ensuring that the concerns of many of the area residents were met. As noted *supra,* the Pear Orchard developers had originally proposed a more traditional rezoning, with no commitments on the part of the developers to utilize the property in a specific manner. Faced with a variety of concerns expressed by area residents, Nat Griffin, chief planning officer for the City of Jackson, determined that a Planned Unit Development would be the best mechanism for addressing these concerns.

¶15. It appears that the PUD was successful in addressing the concerns of the residents living closest to the planned development. Eric Donahoe, representative for the Sugarloch residents, testified before the City Council that:

> I just wanted to say that on Sugarloch Cove, we have worked with this group of developers for a very, very long time, and the city planning folks, to try to come up with something on this piece of property that would be suitable to the neighborhood. And we, after many, many, hours of negotiations with the developers and the city planning folks, we finally did reach a proposal that was satisfactory to us. ... So our neighborhood has been in support of this project for a very long time now, and we hope that this project will come to fruition.

The record indicates that the residents of Sugarloch had been concerned about the possible construction of commercial properties adjacent to Sugarloch, and these residents were able to gain assurances that residential, rather than commercial, properties would be constructed next to their homes. It is apparent that, far from constituting a "contracting away" of the City's police power, the contingency zoning/PUD in the present case constituted an effective tool for the development of the Avery property in a manner which satisfied the concerns of the residents living closest to the property. Absent some sort of commitments on the part of the Pear Orchard developers, it is doubtful that the concerns of these residents could have been adequately addressed. As such, this Court concludes that the contingent zoning in the present case was both legal and beneficial. This point of error is without merit.

> **II. Whether the trial court should have reversed the decision of the City Council of the City of Jackson, Mississippi, to approve Second Amended Zoning Action Application #3131-A as arbitrary, unreasonable, capricious, and not "fairly debatable" where the City Council's decision was based on evidence not in the record before the City of Jackson Planning Board.**

> **III. Whether the trial court should have held that the City Council's meeting with the developer during a private work session to discuss "public business" renders the City**

**Council's decision to approve Second Amended Zoning Action Application #3131-A as arbitrary, unreasonable, capricious, and not "fairly debatable."**

¶16. In addition to arguing that the rezoning was substantively improper due to the contingent zoning provisions, Old Canton argues that the rezoning was procedurally improper as well. City of Jackson ordinances require that, in appeals to the City Council, review should be limited to the record made before the Planning Board. Specifically, Jackson Zoning Ordinance § 1902-04-A provides that:

> Within sixty (60) days after the date set in the case advertisement and receipt of the transcript and documented case record, including the recommendation of the City Planning Board, the City Council shall either approve or deny, in whole or in part, the decision and recommendation of the City Planning Board on record of the case or where there is need for additional information, may remand the case to the City Planning Board for further consideration.

¶17. Old Canton notes that the City Council elected to conduct their own hearings on the matter, but the record indicates that the Council also had access to the record created before the Planning Board. Counsel for Pear Orchard noted at the December 10, 1997 City Council meeting that the Pear Orchard issue had already been brought before the Planning Board and requested that the hearing be conducted largely upon the record established before the planning board:

> The evidence before the planning board, which we would ask be brought forward in this hearing, as well as all of the rest of the record, includes 144 exhibits, the testimony of 17 witnesses ...

It is thus apparent that, while the City Council did conduct a hearing with regard to the amended re-zoning, the hearing was conducted at least in part based upon the record established before the Planning Board, as is the case under the Council's normal procedure.

¶18. Moreover, the facts of the present case indicate that the City Council may have had good cause for departing from its usual procedure in the present case. At the most recent Planning Board vote on the Avery project, the Board had split evenly with regard to the requested rezoning, with two members supporting the rezoning, two opposing the rezoning, and three abstaining.[2] The City Council's decision to conduct its own hearings is, perhaps, understandable in light of the fact that the Planning Board had failed to issue any recommendation at all at its most recent meeting. The present case does not involve a situation in which the Planning Board was bypassed altogether, or where the parties were not given the opportunity to make an extensive record before the board. To the contrary, the Planning Board voted on the rezoning twice,[3] and the hearings produced a voluminous record for the City Council to consider.

¶19. There is little, if any, reason for this Court to reverse the City Council merely because it elected to conduct its own hearing rather than proceeding solely on the record established before the Planning Board. This is not to say that a City Council should feel free to disregard its own internal procedures at its whim. We conclude, however, that a City Council should have a certain degree of procedural flexibility in deciding the issues before it, with the major caveats that the notice and due process rights of all citizens must be respected and that a fair hearing must be provided. In the present case, there is no indication that the hearing conducted by the City Council served to infringe upon the due process rights of area residents in any regard. This point of error is without merit.

¶20. Also without merit is Old Canton's argument that its due process rights were violated by an earlier

meeting between the City Council and Pear Orchard representatives. Old Canton notes that, on the night of November 24, 1997, a representative of Pear Orchard and a representative of Jitney Jungle met with the City Council to discuss Pear Orchard's zoning application. Old Canton initially alleges in its brief that the meeting was not open to the public, stating that:

> Notwithstanding the fact that the Zoning Application was the subject of intense opposition, this meeting was not open to the public and Old Canton Hills was not provided an opportunity to present its view on the matter.

Old Canton cites *Cloverleaf* for the proposition that such private meetings are improper, but Pear Orchard insists that the meeting was a City Council work session which was, in fact, open to the public. Later in its brief, Old Canton appears to concede that the meeting was in fact open to the public, stating that:

> (T)he (circuit) court judicially noticed that `the meeting on November 24, 1997 was a City work session which was open to the public and that Appellant objectors could have appeared and stated their position with respect to the re-zoning at any such meeting." However, Old Canton Hills had no notice that Pear Orchard would appear and make a presentation at that meeting. There was no notice of any *need* for Old Canton Hills to appear before the City Council at that meeting, and so the mere fact that the "work session" was "open to the public" was effectively meaningless.

Clearly, the fact that Old Canton makes differing assertions of fact within the same brief does not lend itself to confidence in their arguments in this regard. Moreover, Old Canton merely complains that they were given no notice that Pear Orchard would "make a presentation" at the work session in question. There is no indication that Old Canton's rights were violated in this regard, and this point of error is without merit.

### IV. Whether the trial court erred in taking judicial notice of certain matters inappropriate for such notice in its Findings of Fact and Conclusions of Law.

¶21. Old Canton next argues that the circuit judge erred in improperly taking judicial notice of various facts in his ruling affirming the rezoning by the Jackson City Council. It does appear that the circuit judge made excessive use of the judicial notice function in his ruling, but it is also apparent that many of the items judicially noticed by the judge were either part of the record or a matter of established legal precedent[4]. The more important point, however, is that the present appeal is primarily from the ruling of the city council rather than from the circuit court, which court had the role of an intermediate appellate court in the present case. As such, the fact that the circuit judge may have made excessive use of judicial notice language should not, in any way, impact this Court's analysis of whether or not the city council acted arbitrarily and capriciously in the present case. Although this point of error may have some merit, any error by the circuit judge in this regard is clearly harmless.

### V. Whether the trial court should have reversed the decision of the City Council of the City of Jackson, Mississippi to approve Second Amended Zoning Action Application #3131-A as arbitrary, unreasonable, capricious, and not "fairly debatable" where the applicant for rezoning failed to show by clear and convincing evidence a public need for rezoning.

### VI. Whether the trial court should have reversed the decision of the City Council of the City of Jackson, Mississippi, to approve Second Amended Zoning Action Application #3131-A as arbitrary, unreasonable, capricious, and not "fairly debatable" where the applicant for

**rezoning failed to show by clear and convincing evidence a change in the character of the neighborhood.**

¶22. Having addressed Old Canton's previous points of error, this Court must now determine whether the rezoning was proper under the standard of review applicable to rezoning decisions. While this Court generally employs the familiar "arbitrary and capricious" standard in reviewing zoning decisions, we have established a rather stringent burden of proof for the petitioner in a rezoning case. In the case of rezoning, the petitioner for rezoning must prove by clear and convincing evidence that:

> (1) There was a mistake in the original zoning, or

> (2) The character of the neighborhood has changed to such an extent as to justify reclassification, and that there was a public need for rezoning. ...

***Board of Aldermen v. Conerly***, 509 So.2d 877, 883 (Miss. 1987). This Court presumes that the original zoning was well planned, and the record must contain findings that the aforementioned two requirements have been met. Further, these findings must be supported by substantial evidence in the record. ***Conerly***, 509 So.2d at 884.

¶23. At the same time, this Court's standard of review on appeal is limited. "The order of a governing body may not be set aside unless it is shown to be arbitrary, capricious, discriminatory, or is illegal, or without a substantial evidentiary basis." ***Id.***. In other words, the judicial department of the government of this state has no authority to interdict either zoning or rezoning decisions which may be said "fairly debatable". ***Luter v. Hammon***, 529 So. 2d 625, 628 (Miss. 1988).

¶24. In the present case, Pear Orchard did not argue that there was a mistake in the original zoning, therefore the issue in the present appeal is whether it is "fairly debatable" that Pear Orchard clearly and convincingly demonstrated that the character of the neighborhood has changed to such an extent as to justify rezoning, and if so, whether Pear Orchard also demonstrated that there is a public need for rezoning. This Court concludes that both questions should be answered in the affirmative.

¶25. This Court finds substantial evidence in the record that the area surrounding the Avery property had undergone sufficient change to warrant the rezoning in the present case. The record indicates, for example, that only 1/20th of the area residences were apartments in 1979, while nearly ½ of those area residences were apartments by 1996.The record also contains engineering reports indicating that there has been a great increase in traffic along Old Canton Road and Pear Orchard road since the initial zoning. Moreover, realtor/appraiser William Gamble's affidavit cites the Pearl River floods in 1979 and 1983 as evidence of a change in the area, stating that the public perceives the Avery property as being flood-prone and thus unsuitable for residential development.

¶26. While this Court may not have reached the same conclusion on a *de novo* review of the facts, we conclude that there is sufficient evidence regarding a change in the neighborhood to make this issue a fairly debatable one. This Court also finds substantial evidence in the record supporting a finding of a public need for the Avery project. The record indicates that the development of the Avery property is potentially of great benefit to the City, and there is little indication that the best interests of the City would be served by the continued undeveloped status of the property. The record supports a conclusion that the City of Jackson planning officers made a good faith and diligent effort to meet the concerns of as many area

residents as possible, while at the same time permitting the development of this very important piece of Northeast Jackson real estate.

¶27. While the proposed PUD was not successful in gaining the support of all area residents, there is little if any basis in the record for this Court to conclude that the City Council's unanimous decision to rezone the Avery property was arbitrary and capricious or not fairly debatable. The rulings of the Jackson City Council and the Hinds County Circuit Court are affirmed.

¶28. **AFFIRMED.**

**SULLIVAN AND PITTMAN, P.JJ., BANKS, SMITH, MILLS AND COBB, JJ., CONCUR. McRAE, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. WALLER, J., NOT PARTICIPATING.**

1. The exact nature of the PUD is discussed *infra*.

2. Old Canton acknowledges that the Planning Board is merely an advisory panel which assists the City Council in reaching a decision through the issuance of a non-binding recommendation.

3. At the first vote, the Planning Board recommended approving the rezoning, but it later developed that one of the area landowners had not been provided with notice of the hearing. The parties thus were forced to conduct new hearings. As noted earlier, no recommendation was made at the second hearing.

4. For example, the circuit judge wrote in her ruling that "The Court further takes judicial notice of the deference afforded legislative bodies in the performance of their functions and absent some abuse of that legislative power and authority or violation of law their decision will be undisturbed upon judicial review."