COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
  
NO. 2-03-089-CV

  
SUPER 
WASH, INC.                                                               APPELLANT
 
V.
 
CITY 
OF WHITE SETTLEMENT                                                   APPELLEE
 
------------
 
FROM 
THE 236TH DISTRICT COURT OF TARRANT COUNTY
 
------------
 
OPINION
 
------------
        Appellant, 
Super Wash, Inc. (Super Wash), filed this suit against Appellee, the City of 
White Settlement (the City), challenging the validity and enforceability of a 
zoning ordinance placing conditions on the use of property owned by Super Wash. 
Both parties filed motions for partial summary judgment. The City’s motion was 
granted and Super Wash’s motion was denied. Both parties then submitted a 
joint motion for final judgment, which the trial court granted. In seven issues, 
Super Wash now argues that the trial court erred by granting the City’s 
partial motion for summary judgment. We affirm in part and reverse in part.
I. 
Background Facts
        On 
August 29, 2000, Super Wash contracted to purchase a tract of land in the City 
for the purpose of constructing and operating a car wash facility. The contract 
for sale was conditioned on Super Wash securing all necessary building permits, 
approvals, and permission from the City to construct the car wash. Super Wash 
contacted the City’s representatives and after receiving approval and 
permission from the City, proceeded with the purchase and development of the 
property.
        On 
or about February 8, 2001, the City issued a building permit to Super Wash to 
construct a car wash in accordance with the plans and specifications contained 
on the site plan previously submitted to the City for approval. The site plan 
clearly showed an exit onto Longfield Drive. When the permit was issued, the 
building official was not aware of the conditions of use imposed on the property 
by the 1986 ordinance that amended the original multifamily medium density 
zoning classification to thoroughfare commercial zoning classification. The 
City’s zoning map did not note the conditions.
        The 
residential neighbors informed the building official of the existence of the 
ordinance less than a week after the building permit was issued. On or about 
February 12, 2001, the City’s building official contacted Super Wash and for 
the first time informed Super Wash that the City required Super Wash to 
construct a wooden fence with brick columns on the northern edge of the property 
along Longfield Drive. He also advised Super Wash that the City required the 
width of the curb cut along Longfield Drive to be increased from eighteen feet 
to twenty-four feet. The existence of a curb cut and driveway, therefore, 
remained an approved part of the site plans.
        After 
the residents brought the 1986 ordinance to the City’s attention, the City 
researched the ordinance more thoroughly in the next few weeks. By a letter 
dated March 1, 2001, the City informed Super Wash that it was required to modify 
its previously submitted and approved site plan again. The plan would need to be 
modified to include the wooden fence with brick columns, but the curb cut and 
driveway would no longer be allowed. This modification was required, the City 
alleged, under Ordinance No. 837-86 (the Ordinance), which states in part:
  
        This 
change of zoning is expressly conditioned upon the owner and/or occupant, now or 
later, of this property constructing and thereafter maintaining a six-foot 
wooden privacy fence with brick columns on Longfield to the building line on 
Cherry Lane in accordance with the requirements in the Building Code. Failing 
these conditions, there shall occur an automatic revision to ‘MFM’ Multi 
Family Medium Density zoning classification.

  
        At 
the time Super Wash received the March letter, construction on the car wash was 
about forty-five percent complete. Based on the letter, Super Wash, under 
protest and without expressly waiving, releasing, or otherwise relinquishing its 
right to complete construction, amended the site plan removing the curb cut and 
driveway and submitted a revised site plan. The City approved this amended site 
plan.
        Super 
Wash then sued the City challenging the validity and enforceability of the 
Ordinance. Both parties filed motions for partial summary judgment. Super Wash 
filed its motion for partial summary judgment on the grounds that the condition 
requiring a fence on Longfield Drive violates the Zoning Enabling Act because 
the fence condition is not uniform with conditions on other property classified 
as thoroughfare commercial; the condition requiring the fence is impermissible 
contract zoning; and the reversionary clause is invalid under the Zoning 
Enabling Act, impermissibly delegating the City’s legislative power. The City 
filed its motion for summary judgment on the grounds that the Ordinance was 
validly passed pursuant to established procedures; the Ordinance is entitled to 
the presumption of validity and enforcement, and there is no evidence to rebut 
the presumption; Super Wash has no standing to challenge the Ordinance; the 
Ordinance was validated by the legislature; the City cannot be estopped from 
enforcing the Ordinance; and the reversionary clause in the ordinance is not at 
issue in the case. The City’s motion was granted in its entirety without 
explanation and Super Wash’s motion was denied in its entirety without 
explanation.
        Believing 
that the matter of attorney’s fees was the only issue that remained following 
the trial court’s partial summary judgment, the parties submitted a joint 
motion for final judgment, which the trial court granted. Super Wash now brings 
this appeal. Super Wash argues, in seven issues, that the trial court erred by 
granting the City’s motion for partial summary judgment.
II. 
Legal Analysis
A. 
Standard of Review
        In 
a summary judgment case, the issue on appeal is whether the movant met his 
summary judgment burden by establishing that no genuine issue of material fact 
exists and that the movant is entitled to judgment as a matter of law.[1]  The burden of proof is on the movant, and all doubts 
about the existence of a genuine issue of material fact are resolved against the 
movant.[2]  Therefore, we must view the evidence 
and its reasonable inferences in the light most favorable to the nonmovant.[3]
        In 
deciding whether there is a material fact issue precluding summary judgment, all 
conflicts in the evidence are disregarded and the evidence favorable to the 
nonmovant is accepted as true.[4]  Evidence that 
favors the movant's position will not be considered unless it is uncontroverted.[5]
        The 
summary judgment will be affirmed only if the record establishes that the movant 
has conclusively proved all essential elements of the movant's cause of action 
or defense as a matter of law.[6]
        A 
defendant is entitled to summary judgment if the summary judgment evidence 
establishes, as a matter of law, that at least one element of a plaintiff’s 
cause of action cannot be established.[7]  The 
defendant as movant must present summary judgment evidence that negates an 
element of the plaintiff’s claim.[8]  Once the 
defendant produces sufficient evidence to establish the right to summary 
judgment, the burden shifts to the plaintiff to come forward with competent 
controverting evidence raising a genuine issue of material fact with regard to 
the element challenged by the defendant.[9]
        When 
both parties move for summary judgment and the trial court grants one motion and 
denies the other, the reviewing court should review both parties’ summary 
judgment evidence and determine all questions presented.[10]  
The reviewing court should render the judgment that the trial court 
should have rendered.[11]
B. 
Standing
        In 
its fifth issue, Super Wash argues that the trial court erred by finding that, 
as a matter of law, it did not have standing to challenge the validity or 
enforceability of the Ordinance. We agree.
        Standing 
pertains to a plaintiff’s justiciable interest in a suit.[12]  
To have standing in Texas, the general rule is that a plaintiff must establish 
that he has an individual interest in a conflict that is distinct from the 
interest of the general public.[13]  
Specifically, a plaintiff has standing if: (1) he has sustained, or is in 
immediate danger of sustaining, some direct injury as a result of the complained 
of wrongful act; (2) there is a direct relationship between the alleged injury 
and the claim to be adjudicated; (3) the plaintiff has a personal stake in the 
controversy; (4) the challenged action has caused the plaintiff some injury in 
fact, either economic, recreational, environmental, or otherwise; and (5) the 
plaintiff is an appropriate party to assert the public interest in the matter as 
well as the plaintiff’s own interest.[14]
        In 
this case, Super Wash has standing to challenge the validity and the City’s 
enforcement of the Ordinance.[15]  It is settled 
law that people have a fundamental right to use their property as they wish, 
provided that the use does not harm others.[16]  
The only way this fundamental right can be limited is through the lawful 
exercise of police power.[17]  The Ordinance, 
and the City’s enforcement thereof, specifically limits Super Wash’s 
fundamental right to use its property.  Accordingly, Super Wash has 
sustained direct injury and it has an individual interest distinct from the 
public’s interest in the validity and enforceability of the Ordinance.
        Super 
Wash also has standing to seek declaration of the validity of the ordinance 
under the Declaratory Judgment Act[18] because its 
rights, status, or other legal relations are affected by the municipal 
ordinance.[19]  Consequently, the trial court 
erred to the extent that it held, as a matter of law, that Super Wash did not 
have standing to challenge the validity and enforceability of the Ordinance. We 
sustain Super Wash’s fifth issue to that extent.
C. 
Zoning
        In 
Super Wash’s first through fourth and sixth issues, it argues that the 
Ordinance is not valid as a matter of law. Zoning is an exercise of a 
municipality’s legislative power.[20]  A 
zoning ordinance, duly adopted pursuant to Chapter 211 of the Texas Local 
Government Code, is presumed to be valid, and the burden is on the party seeking 
to prevent its enforcement to prove that the ordinance is arbitrary or 
unreasonable.[21]  An amendment to a city’s 
zoning ordinance is also presumed valid if it is adopted pursuant to the 
statutory regulations and is not arbitrary or unreasonable.[22]  
An ordinance is arbitrary or unreasonable if it bears no substantial 
relationship to the public health, safety, moral, or general welfare.[23]  The reasonableness of the ordinance is a question 
of law.[24]
        Additionally, 
a municipal ordinance may be void as to some of its provisions and valid as to 
others.[25]  Where the ordinance is severable, 
so that invalid provisions may be eliminated leaving a valid ordinance, the 
invalidity of a part will not invalidate the whole.[26]  
While courts may, at times, sever invalid portions of ordinances and leave in 
force the valid portions, they may not add to or redraft the ordinance.[27]  Furthermore, if eliminating the invalid provisions 
would thwart the intent of the governing body, then the entire ordinance is 
void.[28]
1. 
Contract Zoning
        Specifically, 
in Super Wash’s first and second issues, it argues that the fence requirement 
contained in the Ordinance is invalid contract zoning and an unconstitutional 
delegation of the City’s zoning authority. We disagree.
        Because 
zoning is a legislative function, zoning power may not be abdicated by contract 
or bargain.[29]  Contract zoning is a 
bilateral agreement where the city binds itself to rezone land in return for the 
landowner’s promise to use or not use his property in a certain manner.[30]  Zoning, however, must be done through the exercise 
of legislative power rather than by special arrangements with the owner of a 
particular piece of property.[31]  Just as a 
city’s resolution or motion to amend an ordinance never enacted will not 
receive the full force and effect of a law because it bypasses the legislative 
process,[32] when a city binds itself to enact a 
requested ordinance, the municipality also acts without legislative power. 
Therefore, contract zoning is invalid because the city surrenders its authority 
to determine proper land use and bypasses the entire legislative process.[33]
        Conditional 
zoning, however, occurs when the city unilaterally requires a landowner to 
accept certain restrictions on his land without a prior commitment to rezone the 
land as requested.[34]  Because conditional 
zoning does not involve a promise to rezone that bypasses any procedure required 
by the Local Government Code,[35] the Texas 
Constitution, or the United States Constitution, conditional zoning is not 
invalid per se.[36]  Therefore, conditional 
zoning is valid if it is not arbitrary or capricious and if it reasonably 
relates to the public welfare.[37]
        In 
this case, the City did not make a bilateral agreement with the landowner to 
rezone the property. Although the landowner did inform the Zoning Commission and 
the City Council that he would build a screening fence, this promise did not 
bind the City, nor did it prevent any legislative procedure. In fact, the 
procedures required by the Local Government Code, including notice and a 
hearing, were followed by the City before it enacted the ordinance. 
Consequently, the ordinance was not the product of invalid contract zoning.
        Additionally, 
the Ordinance does not contain an invalid condition as a matter of law. The 
City’s ability to place this condition on the property is within its 
legislative power because the condition reasonably relates to the public 
welfare. Requiring a screening fence prevents access to the residential street, 
decreasing congestion of traffic and promoting safety. Accordingly, the trial 
court did not err to the extent that it held, as a matter of law, the Ordinance 
was not an invalid contract zoning. We overrule Super Wash’s first and second 
issues.
2. 
Validation Statute
        In 
its sixth issue, Super Wash argues that the trial court erred by holding that 
the validation statute, as a matter of law, defeats its challenges to the 
validity and enforceability of the Ordinance. In its third issue, Super Wash 
argues that the Ordinance is in “violation of the Zoning Enabling Act” 
because the condition requiring a fence is not uniform with the conditions on 
other thoroughfare commercial properties. And in its fourth issue, Super Wash 
argues that the automatic reversion clause of the Ordinance is invalid under the 
Zoning Enabling Act, impermissibly delegating the City’s legislative power.
        A 
validation statute is one enacted for the purpose of curing non-constitutional 
defects and irregularities in the adoption of zoning ordinances.[38]  Validation statutes are remedial and are to be 
liberally construed.[39]  The validation statute 
states in part that “[a] governmental act or proceeding of a municipality is 
conclusively presumed, as of the date it occurred, to be valid and to have 
occurred in accordance with all applicable statutes and ordinances.”[40]  The statute, however, also states that it does not 
apply to “an act or proceeding that was void at the time it occurred.”[41]  Thus, the statute cannot cure what the legislature 
could not originally authorize.[42]
a. Uniformity
        In 
Super Wash’s third issue, it only challenges the failure to comply with a 
state statute, not the Ordinance’s constitutionality. Consequently, although 
the general rule is that municipalities must strictly comply with the 
requirements of Chapter 211 of the Texas Local Government Code,[43] as the City points out, we must determine whether the 
alleged lack of uniformity has been cured by the legislature through the 
validation statute.
        In 
this case, because Super Wash challenged a statutory defect rather than a 
constitutional defect in the ordinance, we conclude it was the intention of the 
legislature to cure this type of irregularity through the validation statute.[44]  Therefore, we do not evaluate whether the 
ordinance lacked uniformity because this alleged violation of the Zoning 
Enabling Act was validated. Furthermore, because requiring a screening fence is 
within the legislative power to protect the health, safety, and welfare of the 
residents, the alleged violation was not void at inception. Consequently, the 
trial court did not err to the extent that it held, as a matter of law, that the 
alleged uniformity violation of the Zoning Enabling Act was cured by the 
validation statute. We overrule Super Wash’s third issue and overrule its 
sixth issue in part.
b. Reversionary Clause
        Super 
Wash argues in its fourth issue that the automatic reversion clause of the 
Ordinance is an invalid delegation of the City’s legislative power. We agree. 
Because courts use the same rules that are used to construe statutes to construe 
municipal ordinances, we look first to the plain meaning of the words of the 
provision.[45]  The reversionary clause of the 
Ordinance in this case states: “Failing these conditions, there shall occur an 
automatic revision to ‘MFM’ Multi Family Density zoning classification.” 
Although the validation statute may cure statutory defects that are not void at 
the time it occurred, such as the notice and hearing requirement, this clause 
was not cured because it was void ab initio.[46]
        The 
Ordinance in this case amended the original multifamily medium density zoning 
classification to thoroughfare commercial zoning classification. A zoning 
regulation should be amended only when public interest requires the amendment, 
that is, only when the amendment has a substantial relationship to the health, 
safety, or general welfare of the community.[47]  
The automatic reversion clause was unreasonable and arbitrary at the time the 
ordinance was enacted because the reversion is unlimited as to time and 
completely disregards the future needs of the public.[48]  
Furthermore, the reversion is invalid because it surrenders future legislative 
zoning power.[49]
        The 
facts of this case are distinguishable from those where a special permit is 
authorized by an ordinance requiring the property owner to comply with the 
conditions of the ordinance within a specified time, for example, within one 
year of the enactment of the ordinance, or the property would revert back to its 
prior classification.[50]  We restrict our 
holding to the particular ordinance and facts of this case. Consequently, the 
trial court erred to the extent that it held, as a matter of law, that the 
reversionary clause was valid. We sustain Super Wash’s fourth issue and 
sustain its sixth issue in part.
        Although 
we hold that the reversionary clause is void, the clause can be severed without 
thwarting the intent of the City, leaving a valid ordinance.[51]  
Accordingly, the reversionary clause stating: “Failing these conditions, there 
shall occur an automatic revision to ‘MFM’ Multi Family Density zoning 
classification” is therefore severed from the Ordinance.
D. 
Estoppel
        In 
Super Wash’s seventh and final issue, it argues that the court erred by 
granting partial summary judgment because there are issues of material fact 
regarding whether the City should be estopped from enforcing the ordinance. We 
agree.
        Equitable 
estoppel is based on the principle that if one party by his conduct induces 
another to act in a particular manner, he should not be allowed to adopt an 
inconsistent position and thereby cause loss or injury to the other.[52]  The linchpin for equitable estoppel is 
equity-fairness.[53]
        Although 
the general rule is that when a government is exercising its governmental 
powers, it is not subject to estoppel, there is an exception to that rule.[54]  Where justice, honesty, and fair dealing require 
application of estoppel and no governmental function is impaired, estoppel is 
available against a government.[55]  In order to 
apply estoppel, the trial court must determine whether the landowner is relying 
on an authorized act of a city official or employee, whether the case is one in 
which justice requires estoppel, and whether its application would interfere 
with the city’s governmental functions.[56]
        In 
this case, issues of material fact exist regarding Super Wash’s estoppel 
claim.  First, issues of material fact exist regarding whether the actions 
of the City building official were authorized.  The building official 
testified that he reviews the building plans, authorizes issuance of permits, is 
responsible for anything regarding zoning and site plans, and is also over code 
enforcement.  He also testified that he did issue a building permit to 
Super Wash and that he later requested revised plans regarding a wider curb cut 
and a fence, which Super Wash provided.
        Second, 
Super Wash presented evidence that this is the type of case that requires 
estoppel. Super Wash showed that it obtained a building permit and, acting in 
reliance on the permit, began building.  Further, Super Wash was forty-five 
percent finished building when the City informed it that the fence would have to 
be continuous with no curb cut or the City would issue a stop-work order.  
Finally, because there are issues of material fact about whether this is the 
only city ordinance requiring a fence of this type, the City would not 
automatically be prevented from carrying out governmental functions in the 
future if estoppel were applied in this case.[57]
        Consequently, 
because we find genuine issues of material fact regarding Super Wash’s 
estoppel claim, the trial court erred to the extent that it granted summary 
judgment disposing of this claim. We sustain Super Wash’s seventh issue.
III. 
Conclusion
        Having 
held that Super Wash had standing to challenge the enforcement and the validity 
of the Ordinance, that the reversionary clause is void and severable, that the 
ordinance excluding the reversionary clause is valid, and that issues of 
material fact exist regarding Appellant’s estoppel claim, we affirm the trial 
court’s judgment in part, reverse and render in part, and reverse and remand 
in part.
        We 
affirm the portion of the trial court’s judgment that disposes of the contract 
zoning and lack of uniformity claims. We reverse and render judgment that Super 
Wash has standing to challenge the validity and enforceability of the ordinance 
and that the reversionary clause of the ordinance is void and severed from the 
remaining valid provisions of the ordinance. We reverse and remand solely on the 
estoppel cause of action.

  
                                                                  LEE 
ANN DAUPHINOT
                                                                  JUSTICE

  
PANEL 
B:   LIVINGSTON, DAUPHINOT, and HOLMAN, JJ.
 
DELIVERED: 
February 26, 2004


NOTES
1.  
Tex. R. Civ. P. 166a(c); S.W. Elec. Power Co. v. 
Grant, 73 S.W.3d 211, 215 (Tex. 2002); City of Houston v. Clear Creek 
Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979).
2.  
S.W. Elec. Power Co., 73 S.W.3d at 215; Rhone-Poulenc, Inc. v. Steel, 
997 S.W.2d 217, 223 (Tex. 1999); Great Am. Reserve Ins. Co. v. San Antonio 
Plumbing Supply Co., 391 S.W.2d 41, 47 (Tex. 1965).
3.  
Great Am., 391 S.W.2d at 47.
4.  
Rhone-Poulenc, 997 S.W.2d at 223; Harwell v. State Farm Mut. Auto. 
Ins. Co., 896 S.W.2d 170, 173 (Tex. 1995).
5.  
Great Am., 391 S.W.2d at 47.
6.  
Clear Creek Basin, 589 S.W.2d at 678.
7.  
Elliott-Williams Co. v. Diaz, 9 S.W.3d 801, 803 (Tex. 1999).
8.  
Centeq Realty, Inc. v. Siegler, 899 S.W.2d 195, 197 (Tex. 1995).
9.  
Id.
10.  
Dow Chem. Co. v. Bright, 89 S.W.3d 602, 605 (Tex. 2002).
11.  
Id.
12.  
See, e.g., Williams v. Lara, 52 S.W.3d 171, 178 (Tex. 
2001); Lorentz v. Dunn, 112 S.W.3d 176, 178 (Tex. App.—Fort Worth 2003, 
pet. filed); Tex. Dep’t of Transp. v. City of Sunset Valley, 92 S.W.3d 
540, 550 (Tex. App.—Austin 2002, pet. granted) (op. on reh’g); El Paso 
Cmty. Partners v. B & G/Sunrise Joint Venture, 24 S.W.3d 620, 624 (Tex. 
App.—Austin 2000, no pet.).
13.  
Williams, 52 S.W.3d at 178.
14.  
El Paso Cmty. Partners, 24 S.W.3d at 624; Marburger v. Seminole 
Pipeline Co., 957 S.W.2d 82, 89 (Tex. App.—Houston [14th Dist.] 1997, pet. 
denied).
15.  
See Mayhew v. Town of Sunnyvale, 774 S.W.2d 284, 295–96 (Tex. 
App.—Dallas 1989, writ denied) cert. denied, 498 U.S. 1087 (1991).
16.  
Id.
17.  
Id.
18.  
Tex. Civ. Prac. & Rem. Code Ann. § 37.004 (Vernon 1997).
19.  
Mayhew, 774 S.W.2d at 295–96.
20.  
See, e.g., City of Pharr v. Tippitt, 616 S.W.2d 173, 175 
(Tex. 1981); City of San Antonio v. Arden Encino Partners, Ltd., 
103 S.W.3d 627, 630 (Tex. App.—San Antonio 2003, no pet.).
21.  
Bd. of Adjustment of San Antonio v. Wende, 92 S.W.3d 424, 431 (Tex. 
2002); City of Fort Worth v. Johnson, 388 S.W.2d 400, 402 (Tex. 1964); Tex. Loc. Gov’t Code Ann. §§ 
211.001–.021 (Vernon 1999 & Supp. 2004).
22.  
See Arden Encino Partners, 103 S.W.3d at 631–32.
23.  
See, e.g., Tippitt, 616 S.W.2d at 176; City of Arlington 
v. City of Fort Worth, 844 S.W.2d 875, 878 (Tex. App.—Fort Worth 1992, 
writ denied).
24.  See, 
e.g., Tippitt, 616 S.W.2d at 176; Arden Encino Partners, 
103 S.W.3d at 630.
25. 
City of Fort Worth v. Atlas Enters., 311 S.W.2d 922, 924 (Tex. 
App.—Fort Worth 1958, writ ref’d n.r.e.).
26.  
Id.
27.  
City of Willow Park v. Bryant, 763 S.W.2d 506, 511 (Tex. App.—Fort 
Worth 1988, no writ).
28.  
City of Forney v. Estate of Pinson, 575 S.W.2d 58, 61 (Tex. Civ. 
App.—Texarkana 1978, writ ref’d n.r.e.); Atlas Enters., 311 S.W.2d at 
924.
29.  
See, e.g., City of Arlington, 844 S.W.2d at 878; City of 
Farmers Branch v. Hawnco, Inc., 435 S.W.2d 288, 291 (Tex. Civ. App.—Dallas 
1968, writ ref’d n.r.e.).
30.  
See, e.g., Duran v. IDC Bellingham, LLC, 793 N.E.2d 359, 
365–66 (Mass. 2003); Old Canton Hills Homeowners Ass’n v. Mayor of 
Jackson, 749 So. 2d 54, 57–58 (Miss. 1999); Dacy v. Village of Ruidoso, 
845 P.2d 793, 796–97 (N.M. 1992); Allred v. City of Raleigh, 178 S.E.2d 
432, 441 (N.C. 1971).
31.  
See, e.g., City of Arlington, 844 S.W.2d at 878; City of 
Farmers Branch, 435 S.W.2d at 291; Old Canton Hills Homeowners Ass’n, 
749 So. 2d at 57–58; Dacy, 845 P.2d at 797.
32.  
See City of Hutchins v. Prasifka, 450 S.W.2d 829, 833 (Tex. 1970).
33.  
See, e.g., Old Canton Hills Homeowners Ass’n, 749 So. 2d 
at 57; Dacy, 845 P.2d at 797.
34.  
See generally, John Mixon, Texas Municipal Zoning Law § 7.112 (3d ed. 1999); 8 Eugene McQuillin, 
Municipal Corporations § 25.93.10 (3d ed. 2000).
35.  
See Tex. Loc. Gov’t Code Ann. §§ 211.001–.021.
36.  
See Dacy, 845 P.2d at 797; see also Prasifka, 450 S.W.2d at 
833.
37.  
See Arden Encino Partners, 103 S.W.3d at 631–32.
38.  
See, e.g., Prasifka, 450 S.W.2d at 833; West End Pink, 
Ltd. v. City of Irving, 22 S.W.3d 5, 8 (Tex. App.—Dallas 1999, pet. 
denied); Kinkaid School, Inc. v. McCarthy, 833 S.W.2d 226, 231 (Tex. 
App.—Houston [1st Dist.] 1992, no writ); Leach v. City of North Richland 
Hills, 627 S.W.2d 854, 858 (Tex. App.—Fort Worth 1982, no writ).
39.  
West End Pink, 22 S.W.3d at 8; Murmur Corp. v. Bd. of Adjustment, 
718 S.W.2d 790, 793 (Tex. App.—Dallas 1986, writ ref’d n.r.e.); see, 
e.g., Leach, 627 S.W.2d at 858.
40.  
Tex. Loc. Gov’t Code Ann. § 51.003(a) (Vernon Supp. 2004).
41.  
Id. § 51.003(b)(1).
42.  
West End Pink, 22 S.W.3d at 8.
43.  
See Truman v. Irwin, 488 S.W.2d 907, 908 (Tex. Civ. App.—Fort Worth 
1972, no writ); Appolo Dev., Inc. v. City of Garland, 476 S.W.2d 
365, 367 (Tex. Civ. App.—Dallas 1972, writ ref’d n.r.e.).
44.  
Mayhew, 774 S.W.2d at 296.
45.  
Wende, 92 S.W.3d at 430.
46.  
See Tex. Loc. Gov’t Code Ann. § 51.003(b)(1); West End Pink, 
22 S.W.3d at 8; Murmur, 718 S.W.2d at 793.
47.  
See Tippitt, 616 S.W.2d at 177; McWhorter v. City of Winnsboro, 
525 S.W.2d 701, 703 (Tex. Civ. App.—Tyler 1975, writ ref’d n.r.e.).
48.  
See Gay Inv. Co. v. Tex. Turnpike Auth., 510 S.W.2d 147, 150 (Tex. Civ. 
App.—Dallas 1974, writ ref’d n.r.e.).
49.  
See City of Corpus Christi v. Bayfront Assocs., Ltd., 814 S.W.2d 98, 107 
(Tex. App.—Corpus Christi 1991, writ denied); Fid. Land & Trust Co. of 
Tex. v. City of W. Univ. Place, 496 S.W.2d 116, 117 (Tex. Civ. 
App.—Houston [14th Dist.] 1973, writ ref’d n.r.e.).
50.  
See, e.g., Sherwood Lanes, Inc. v. City of San Angelo, 511 
S.W.2d 597, 598–99 (Tex. Civ. App.—Austin 1974, writ ref’d n.r.e.); see 
also Mixon, supra, § 
7.112.
51.  
See Atlas Enters., 311 S.W.2d at 924.
52.  
Fabrique, Inc. v. Corman, 796 S.W.2d 790, 792 (Tex. App.—Dallas 1990), writ 
denied, 806 S.W.2d 801 (Tex. 1991); Mobil Oil Corp. v. Frederick, 615 
S.W.2d 323, 325 (Tex. Civ. App.—Fort Worth 1981), aff’d in part, rev’d 
in part on other grounds, 621 S.W.2d 595 (Tex. 1981).
53.  
Tex. Enters., Inc. v. Arnold Oil Co., 59 S.W.3d 244, 249 (Tex. App. 
—San Antonio 2001, no pet.).
54.  
See, e.g., Prasifka, 450 S.W.2d at 835–36; Maguire Oil 
Co. v. City of Houston, 69 S.W.3d 350, 365 (Tex. App.—Texarkana 2002, pet. 
denied); City of Dallas v. Rosenthal, 239 S.W.2d 636, 645 (Tex. 
App.—Dallas 1951, writ ref’d n.r.e.).
55.  
See, e.g., Roberts v. Haltom City, 543 S.W.2d 75, 80 (Tex. 
1976).
56.  
See, e.g., Maguire Oil Co., 69 S.W.3d at 368.
57.  
See, e.g., id.