845 P.2d 793

**Wayne DACY and Sandra Dacy, his wife, Petitioners–Appellants,**

v.

**VILLAGE OF RUIDOSO, Respondent–Appellee.**

**No. 20143.**

Supreme Court of New Mexico.

Nov. 19, 1992.

Sam A. Westergren, Santa Fe, for petitioners-appellants.

David A. Thomsen, Ruidoso, for respondent-appellee.

## OPINION

MONTGOMERY, Justice.

In this case we deal with an instance of so-called "contract zoning." The trial court found that the Village of Ruidoso ("the Village") had contracted with the appellants, Wayne and Sandra Dacy, to rezone a tract of land conveyed to them in exchange for another tract and held that the contract was void for illegality. In the Dacys' suit against the Village for damages for breach of contract, the court after a bench trial entered judgment for the Village. The Dacys appeal and we affirm, discussing the enforceability of a contract to zone property and the consequences of a ruling that the contract is unenforceable.

## I. FACTS AND ISSUES

In 1983, the Village desired to acquire property owned by the Dacys for use as part of a highway right of way. Because the Village had neither the time nor the money to condemn the Dacys' property, it proposed a trade under which the Village would convey certain property, described as "Tract A–A," to the Dacys in exchange for the property it needed for the right of way. The Dacys agreed to this exchange, and in October 1983 the parties drafted a written agreement for the trade of these

lands. The parties executed the agreement in January 1984 by exchanging quitclaim deeds to their respective parcels.

The Village conveyed Tract A–A to the Dacys subject to the restrictive covenants contained in a document entitled "Restrictive Covenants of Gavilan Subdivision," which was incorporated by reference into both the agreement and the Village's deed.[1] Both the agreement and the deed, however, specifically excepted paragraphs A(2) and A(11) of the Gavilan subdivision restrictive covenants. These omitted paragraphs, had they been included, would have prohibited subdivision and multi-family use of Tract A–A and restricted removal of trees and earth.

After the parties exchanged their deeds, the Dacys applied to the Village for rezoning of Tract A–A. They requested a change in zoning from R–1 (residential single-family housing) to R–2 (multi-family housing) so that they could build condominiums on the property. After review of the application, the Planning and Zoning Commission, an advisory body to the Village Council, recommended rezoning Tract A–A as R–2. The Village Council then considered the matter in October 1984 and, declining to follow the Commission's recommendation, denied the Dacys' rezoning request.

In November 1984, the Dacys filed suit against the Village, seeking reversal of the Council's denial of their request and damages for breach of contract and misrepresentation. The Dacys based their breach of contract claim on an alleged promise by the Village in the 1983 agreement to rezone Tract A–A as R–2.

The court held a hearing in February 1986 and determined that, for reasons not material here, Tract A–A had no zoning classification. Accordingly, upon agreement of the parties, the court remanded the matter to the Planning and Zoning Commission to properly zone Tract A–A. The court deferred resolution of the breach of contract and misrepresentation claims pending the Village's reconsideration of the zoning issue.

In April 1986, the Village zoned Tract A–A as R–2. By that time, however, the market in Ruidoso for R–2 property had collapsed. Thus, when the Dacys sold Tract A–A in June 1986, they received only $150,000 for the property, compared with the $405,173 that the court found would have been its fair market value in 1984 had it been zoned R–2 at that time.

The Dacys therefore pursued their breach of contract claim against the Village.[2] The court held a hearing on the issue in April 1989 and afterwards entered findings of fact and conclusions of law. It determined that "[a] fair reading of [the 1983 agreement and the deed from the Village to the Dacys] would support a conclusion that was intended to allow the [Dacys] to build condominiums." It also found that the 1983 agreement "implied the duty of the Village to zone the property R–2." The court apparently reasoned that, by omitting paragraphs A(2) and A(11) of the restrictive covenants from the agreement and deed and thereby allowing subdivision of the property, the Village impliedly agreed to zone Tract A–A as R–2 so as to permit multi-family housing.[3]

In its findings, the court stated that the Dacys had incurred damages of $255,173,

---

1. Tract A–A was located adjacent to the Gavilan subdivision but was not a part of that subdivision.

2. The Dacys apparently dropped their misrepresentation claim, because the breach of contract claim was the only issue before the court at the April 1989 hearing.

3. The court's reasoning is not apparent from its findings of fact or conclusions of law. However, in its letter decision to the parties, the court stated:

> I understand [the Village's] argument that all the deed purported to do was to allow Dacy to

subdivide the parcel, and did not speak to the issue of multi-family use, but I am assuming for the moment that the Village did, by implication, contract to zone the Tract A–A, R–2, and the court would find that the omission of the zoning provision from the contract was necessarily implied.

Additionally, at oral argument before this Court, counsel for the Dacys stated that the only evidence supporting an implied promise to zone Tract A–A as R–2 was the deletion of paragraphs A(2) and A(11) from the agreement and deed.

representing the difference in market value of Tract A–A as R–2 property in 1984, when the Dacys applied for and were denied rezoning, and June 1986, when the Dacys sold the property as R–2 for $150,000. However, the court concluded that there was no legal basis upon which the Dacys could recover those damages, because the implied contract to zone between the Dacys and the Village was unenforceable. It stated that "[a] contract to zone property between a zoning authority and an individual is illegal and an ultra vires bargaining away of the police power of the municipality" and that "[i]llegal contracts are void ab initio and the court must leave the parties as it finds them." Accordingly, the court awarded the Dacys no damages.

On appeal, the Dacys assert that the trial court erred in holding that the contract was illegal and unenforceable; they also assert that the Village should be estopped to claim that the contract was illegal. They urge us to reverse the trial court's holding of illegality and award them damages in the amount the court determined.

## II. LEGALITY OF CONTRACT ZONING

This case presents this Court with our first opportunity to discuss in some detail the legality of "contract zoning." While a few of our previous opinions relate to contract zoning, none provides clear guidance on the subject. *See Westgate Families v. County Clerk*, 100 N.M. 146, 148, 667 P.2d 453, 455 (1983) (because the New Mexico Zoning Enabling Act expressly provides for zoning by representative bodies, it denies an exercise of zoning power by referendum); *Mechem v. City of Santa Fe*, 96 N.M. 668, 672, 634 P.2d 690, 694 (1981) (dictum) (endorsing validity of contract zoning under certain circumstances); *Spray v. City of Albuquerque*, 94 N.M. 199, 201, 608 P.2d 511, 513 (1980) (contracts attempting to curtail or prohibit a municipality's legislative or administrative authority are uniformly invalid).

### A. Definition of Contract Zoning

At the outset, it 's important to explain what is meant by "contract zoning." Contract zoning has been variously defined by courts and commentators and has sometimes been used interchangeably with the term "conditional zoning." *See, e.g.*, 2 Robert M. Anderson, *American Law of Zoning 3d* § 9.21 (1986); 1 Norman Williams, Jr. & John M. Taylor, *American Planning Law* §§ 29.01–.04 (rev. ed. 1988). Contract and conditional zoning are distinct, however, and an appreciation of the distinction is important to understanding our holding today.

■ "Contract zoning," properly used, describes an agreement between a municipality and another party in which the municipality's consideration consists of either a promise to zone property in a requested manner or the actual act of zoning the property in that manner. *Cf.* Nolan M. Kennedy, Jr., Note, *Contract and Conditional Zoning: A Tool for Zoning Flexibility*, 23 Hastings L.J. 825, 831 (1972) (defining contract zoning in slightly different terms). A contract to zone may be in the form of either a unilateral contract or a bilateral contract. *See id.* at 837–38. A bilateral contract involves reciprocal promises in which the municipality promises to zone property in a certain manner in return for some promise from the other party to the contract. *See id.* at 838. A unilateral contract, on the other hand, consists of a promise by only one of the contracting parties; the other party's consideration is action or forbearance rather than a promise. 1 Arthur L. Corbin, *Corbin on Contracts* § 21 (1963). Thus, in the context of contract zoning, a unilateral contract describes two possible situations: Either a municipality promises to rezone in return for some action or forbearance by the other contracting party, or the other contracting party makes a promise in return for the municipality's act of rezoning. *Cf.* Kennedy, *supra*, at 837 (describing unilateral contract zoning only in terms of a promise by the other contracting party in return for the municipality's action of rezoning; not describing the converse situation).

In comparison, conditional zoning is not contract zoning at all, because it does not

involve a promise by either party. Rather, conditional zoning describes the situation in which a municipality rezones on condition that a landowner perform a certain act prior to, simultaneously with, or after the rezoning. *Id.* at 831. The absence of an enforceable promise by either party distinguishes conditional zoning from contract zoning. *See id.* In the present case, we address only the validity of contract zoning; we do not consider the propriety of conditional zoning.

### B. Illegal Contract Zoning

Numerous courts have criticized contract zoning, declaring it invalid per se. *See* Judith W. Wegner, *Moving Toward the Bargaining Table: Contract Zoning, Development Agreements, and the Theoretical Foundations of Government Land Use Deals,* 65 N.C.L.Rev. 976, 982–83 (1987). While these courts have advanced several grounds for disapproving contract zoning, the most common rationale is that contract zoning is inherently flawed as a "problematic blend of contract and police powers." *Id.* at 982. Their opinions typically condemn contract zoning as an illegal bargaining away or abrogation of the police power. *See, e.g., Hartman v. Buckson,* 467 A.2d 694, 699–700 (Del.Ch.1983); *Hartnett v. Austin,* 93 So.2d 86, 89 (Fla. 1956) (en banc). As one commonly cited case states, "Zoning is an exercise of the police power to serve the common good and general welfare. It is elementary that the legislative function may not be surrendered or curtailed by bargain or its exercise controlled by the considerations which enter into the law of contracts." *V.F. Zahodiakin Eng'g Corp. v. Zoning Bd. of Adjustment,* 8 N.J. 386, 86 A.2d 127, 131 (1952).

We agree that in most situations contract zoning is illegal. However, we do not subscribe to a per se rule against all forms of contract zoning, nor does our rationale rest on the "bargaining away" or abrogation of the police power. Rather, we believe that contract zoning is illegal whenever it arises from a *promise* by a municipality to zone property in a certain manner, *i.e.,* when a municipality is either a

party to a bilateral contract to zone or when a municipality is a party to a unilateral contract in which the municipality promises to rezone in return for some action or forbearance by the other contracting party.

A contract in which a municipality promises to zone property in a specified manner is illegal because, in making such a promise, a municipality preempts the power of the zoning authority to zone the property according to prescribed legislative procedures. Our statutes require notice and a public hearing prior to passage, amendment, supplement, or repeal of any zoning regulation. NMSA 1978, § 3–21–6(B) (Repl.Pamp.1985). The statutes also grant to citizens and parties in interest the opportunity to be heard at the hearing. *Id.* By making a promise to zone before a zoning hearing occurs, a municipality denigrates the statutory process because it purports to commit itself to certain action before listening to the public's comments on that action. Enforcement of such a promise allows a municipality to circumvent established statutory requirements to the possible detriment of affected landowners and the community as a whole. *See County of Ada v. Walter,* 96 Idaho 630, 533 P.2d 1199, 1201 (1975) (oral agreement to allow mobile homes on property was invalid because it did not comply with county zoning ordinance); *Midtown Properties, Inc. v. Township of Madison,* 68 N.J.Super. 197, 172 A.2d 40, 45–46 (Ct.Law Div.1961) (contract to zone illegal because it circumvented mandatory zoning procedures), *aff'd,* 78 N.J.Super. 471, 189 A.2d 226 (Ct.App.Div. 1963) (per curiam).

### C. Legal Contract Zoning

The foregoing analysis implies that one form of contract zoning is legal: a unilateral contract in which a party makes a promise in return for a municipality's *act* of rezoning. In this situation, the municipality makes no promise and there is no enforceable contract until the municipality acts to rezone the property. *See* 1 Corbin, *supra,* § 21, at 54. Because the municipality does not commit itself to any specified action before the zoning hearing, it does

not circumvent statutory procedures or compromise the rights of affected persons. *Cf.* Kennedy, *supra,* at 837 (in a unilateral contract to zone, municipality makes no binding promise and there is no abrogation of the police power). Some courts have nonetheless condemned this form of contract zoning on the ground that the contracting party's promise provides improper motivation for the municipality's rezoning action. *See, e.g., City of Knoxville v. Ambrister,* 196 Tenn. 1, 263 S.W.2d 528, 530 (1953); *see also* Wegner, *supra,* at 979 n. 122 ("The distinction between bilateral and unilateral agreements seems problematic on policy grounds, however, because even unilateral agreements can serve as an incentive to government action."). We do not find this reasoning persuasive. Private interests are inherent in any zoning matter; therefore, it is disingenuous to condemn a method of zoning because it benefits private interests in some way. Moreover, any potential misconduct that might occur through unilateral contract zoning may be corrected through judicial review if the action of the zoning authority is improper. *See Singleterry v. City of Albuquerque,* 96 N.M. 468, 472, 632 P.2d 345, 349 (1981) (reviewing court upholds decision of zoning authority if not fraudulent, arbitrary, or capricious); *see also* Kennedy, *supra,* at 834.

### III.  CONSEQUENCES OF ILLEGAL CONTRACT ZONING

■ If we assume the correctness of the trial court's finding of fact that the Village agreed in the 1983 Agreement to rezone the Dacys' property, this case involves a form of unilateral contract zoning: The Village promised to rezone Tract A–A in return for the Dacys' conveyance of property that the Village needed for the highway right of way. Under the principles set out above, this contract is unenforceable because the Village attempted to commit itself to specific zoning action without following the required statutory procedures.

The trial court concluded that the contract between the Village and the Dacys was illegal and that "[i]llegal contracts are void ab initio and the court must leave the parties as it finds them." It therefore concluded that it could award no damages to the Dacys. In its letter decision to the parties, the court stated that "any remedy, whether equitable or legal, is foreclosed as to an illegal contract." While we affirm the trial court's denial of relief to the Dacys, we explain our reasoning in some detail so as to clarify the legal rules regarding the availability of relief to a party to an illegal contract.

■ The trial court was correct in stating that damages are unavailable as relief to a party to an illegal contract. *See Restatement (Second) of Contracts* § 346(1) (1979) [hereinafter *Restatement* ] ("The injured party has a right to damages for any breach by a party against whom the contract *is enforceable* ....") (emphasis added). Additionally, neither specific performance nor an injunction will be granted to a party to an illegal contract. *See id.* § 365 (specific performance and injunction are unavailable if act that would be compelled is contrary to public policy). Although the foregoing remedies are unavailable, it is not accurate to say that "any remedy ... is foreclosed as to an illegal contract." As Corbin states, "A party who has rendered part or all of the bargained-for-exchange, or has otherwise materially changed his position in reliance on the return promise in an 'illegal' bargain, has often seemed to deserve and has often been given a restitutionary remedy." 6A Corbin, *supra,* § 1534, at 818.

■ Restitution, in the context of contract law, is a remedy that restores to a contracting party any benefit that he or she has conferred on the other party through part performance or reliance. *Restatement, supra,* §§ 344(c), 370. Restitution may be in the form of the specific restoration of land or chattels, the repayment of money, or the payment of the reasonable value in money of services rendered. 6A Corbin, *supra,* § 1535, at 821. In the present case, restitution to the Dacys, if granted, would probably take the form of a payment to them of the value of the land they conveyed to the Village, less

the proceeds of Tract A–A when they sold it in 1986.[4] (The court could not order the Village to return the land to the Dacys since it presumably has already been used by the Village for the highway right of way.)

The circumstances in which restitution will be awarded to a party to an illegal contract cannot be easily defined or categorized. *Id.* § 1534, at 818–19. The *Restatement* says that restitution is generally unavailable to a party who has rendered performance in return for a promise that is unenforceable "unless denial of restitution would cause disproportionate forfeiture." *Restatement, supra,* § 197. Whether the forfeiture is "disproportionate" depends on the extent of the denial of compensation compared to the gravity of the public interest involved and the extent to which the contract contravenes public policy. *Id.* comment b. Additionally, Corbin identifies the following factors (which we assume to be a nonexclusive list) as influencing whether a court will grant restitution: The degree of criminality involved in the illegal contract, the comparative innocence or guilt of the parties, the extent of public harm involved, the moral quality of the parties' conduct and the severity of the penalty or forfeiture that will result from denial of relief. 6A Corbin, *supra,* § 1534, at 818.

We do not believe that denying restitution in this case will cause a disproportionate forfeiture. Several factors support this conclusion. First, we have serious doubts that the Village even made a promise to rezone. As stated above, the only evidence

to support such a promise was the omission of paragraphs A(2) and A(11) of the restrictive covenants from the agreement and the deed. The omission of these paragraphs allowed subdivision and possible multi-family use of Tract A–A and unlimited removal of trees and earth on the land. We see nothing in the deletion of these covenants that gave rise to an implied promise by the Village to rezone the property. In deleting these covenants from the agreement and deed, the Village authorized the *present* resubdivision of Tract A–A and *possible* future use of the property for multi-family housing, but we cannot see that it promised to rezone the property.[5]

A second factor influencing our decision is our belief that the Dacys bear some responsibility for their loss because they failed to protect themselves against the risk of a decline in the market for R–2 property. By entering into the agreement with the Village without demanding a time deadline for the rezoning, the Dacys assumed the risk that the Village would not promptly rezone and that the market in Ruidoso for R–2 property would drop. The Dacys could have expressly provided in the agreement that their transfer of land to the Village would not be effective unless and until the Village rezoned Tract A–A or unless the Village rezoned Tract A–A by a specified date. In that way, had the Village failed to comply with those terms, the Dacys would not have suffered any harm. By failing so to protect themselves, the Dacys undertook the risk that the market for R–2 property would collapse and that they would lose money on the deal.

---

**4.** The Dacys did not seek restitution in their complaint against the Village asserting breach of contract. Even had they requested such relief as an alternative to their claim for damages, and even if (contrary to the reasoning in the text *infra*) a court were to find a disproportionate forfeiture absent restitutionary relief, they still would have faced significant problems in securing this type of relief. *See* NMSA 1978, § 37–1–23(A) (Repl.Pamp.1990) (granting governmental entities immunity from actions based on contract, except actions based on *valid* written contract) (emphasis added); *Hydro Conduit Corp. v. Kemble,* 110 N.M. 173, 793 P.2d 855 (1990) (subcontractor's claim against state for restitution, on account of materials furnished to general contractor for construction of public-

works projects, was "based on contract" and hence barred by § 37–1–23).

**5.** The district court seems to have shared our doubts about the existence of a promise to rezone. Although the court stated in its findings that "a fair reading" of the parties' agreement "would support a conclusion that [it] was intended to allow the [Dacys] to build condominiums" and that the agreement "implied the duty of the Village to zone the property R–2," the court said in its letter to the parties that it was "assuming for the moment" that the Village had by implication contracted to zone Tract A–A as R–2.

A final factor causing us to believe that the Dacys have not suffered a disproportionate forfeiture lies in the at least arguable unreasonableness of their reliance on the Village's purported promise to rezone Tract A–A. As mentioned previously, the Dacys have argued on appeal that the Village should be estopped to assert the invalidity of the claimed agreement to rezone. The estoppel asserted is "equitable estoppel," based on cases such as *Albuquerque Nat'l Bank v. Albuquerque Ranch Estates, Inc.,* 99 N.M. 95, 101, 654 P.2d 548, 554 (1982). It is clear, however, that this form of estoppel, like other forms,[6] requires the party asserting it to have reasonably relied on the other party's promise or representation. *See, e.g., id.* The reasonableness of the Dacys' reliance on the Village's "implied" promise to rezone—in a contract covering in considerable detail other aspects of the parties' transaction—is questionable to say the least.

We do not hold that the Dacys' reliance on the Village's putative promise to rezone was unreasonable as a matter of law; nor do we hold, as a matter of law, that the Village did not in fact make such a promise; nor do we hold—again, as a matter of law—that the Dacys assumed the risk that the real estate market in Ruidoso would collapse during 1985. We hold only that, as a matter of law, the Village's promise to rezone, if made, was unenforceable and that in the circumstances of this case denying restitution to the Dacys does not result in a disproportionate forfeiture.

The trial court's judgment is therefore affirmed.

IT IS SO ORDERED.

RANSOM, C.J., and BACA, J., concur.

---

6. For example, promissory estoppel. *See Restatement, supra,* § 90 (promissory estoppel may be available if promisor should reasonably have expected promise to induce action or forbearance by promisee); *Eavenson v. Lewis Means, Inc.,* 105 N.M. 161, 162, 730 P.2d 464, 465 (1986) (promissory estoppel requires that promisee act reasonably in justifiable reliance on promise as made).