SUPER WASH, INC. V. CITY OF WHITE SETTLEMENT

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-03-089-CV

SUPER WASH, INC. APPELLANT

V.

CITY OF WHITE SETTLEMENT APPELLEE

------------

FROM THE 236
TH
 DISTRICT COURT OF TARRANT COUNTY

------------

OPINION

------------

Appellant, Super Wash, Inc. (Super Wash), filed this suit against Appellee, the City of White Settlement (the City), challenging the validity and enforceability of a zoning ordinance placing conditions on the use of property owned by Super Wash.  Both parties filed motions for partial summary judgment.  The City’s motion was granted and Super Wash’s motion was denied.  Both parties then submitted a joint motion for final judgment, which the trial court granted.  In seven issues, Super Wash now argues that the trial court erred by granting the City’s partial motion for summary judgment.  We affirm in part and reverse in part.

I. Background Facts

On August 29, 2000, Super Wash contracted to purchase a tract of land in the City for the purpose of constructing and operating a car wash facility.  The contract for sale was conditioned on Super Wash securing all necessary building permits, approvals, and permission from the City to construct the car wash.  Super Wash contacted the City’s representatives and after receiving approval and permission from the City, proceeded with the purchase and development of the property.

On or about February 8, 2001, the City issued a building permit to Super Wash to construct a car wash in accordance with the plans and specifications contained on the site plan previously submitted to the City for approval.  The site plan clearly showed an exit onto Longfield Drive.  When the permit was issued, the building official was not aware of the conditions of use imposed on the property by the 1986 ordinance that amended the original multifamily medium density zoning classification to thoroughfare commercial zoning classification.  The City’s zoning map did not note the conditions.

The residential neighbors informed the building official of the existence of the ordinance less than a week after the building permit was issued.  On or about February 12, 2001, the City’s building official contacted Super Wash and for the first time informed Super Wash that the City required Super Wash to construct a wooden fence with brick columns on the northern edge of the property along Longfield Drive.  He also advised Super Wash that the City required the width of the curb cut along Longfield Drive to be increased from eighteen feet to twenty-four feet.  The existence of a curb cut and driveway, therefore, remained an approved part of the site plans.

After the residents brought the 1986 ordinance to the City’s attention, the City researched the ordinance more throughly in the next few weeks.  By a letter dated March 1, 2001, the City informed Super Wash that it was required to modify its previously submitted and approved site plan again.  The plan would need to be modified to include the wooden fence with brick columns, but the curb cut and driveway would no longer be allowed.  This modification was required, the City alleged, under Ordinance No. 837-86 (the Ordinance), which states in part:

This change of zoning is expressly conditioned upon the owner and/or occupant, now or later, of this property constructing and thereafter maintaining a six-foot wooden privacy fence with brick columns on Longfield to the building line on Cherry Lane in accordance with the requirements in the Building Code.  Failing these conditions, there shall occur an automatic revision to ‘MFM’ Multi Family Medium Density zoning classification.

At the time Super Wash received the March letter, construction on the car wash was about forty-five percent complete.  Based on the letter, Super Wash, under protest and without expressly waiving, releasing, or otherwise relinquishing its right to complete construction, amended the site plan removing the curb cut and driveway and submitted a revised site plan.  The City approved this amended site plan.

Super Wash then sued the City challenging the validity and enforceability of the Ordinance.  Both parties filed motions for partial summary judgment.  Super Wash filed its motion for partial summary judgment on the grounds that the condition requiring a fence on Longfield Drive violates the Zoning Enabling Act because the fence condition is not uniform with conditions on other property classified as thoroughfare commercial; the condition requiring the fence is impermissible contract zoning; and the reversionary clause is invalid under the Zoning Enabling Act, impermissibly delegating the City’s legislative power.  The City filed its motion for summary judgment on the grounds that the Ordinance was validly passed pursuant to established procedures; the Ordinance is entitled to the presumption of validity and enforcement, and there is no evidence to rebut the presumption; Super Wash has no standing to challenge the Ordinance; the Ordinance was validated by the legislature; the City cannot be estopped from enforcing the Ordinance; and the reversionary clause in the ordinance is not at issue in the case.  The City’s motion was granted in its entirety without explanation and Super Wash’s motion was denied in its entirety without explanation.

Believing that the matter of attorney’s fees was the only issue that remained following the trial court’s partial summary judgment, the parties submitted a joint motion for final judgment, which the trial court granted.  Super Wash now brings this appeal.  Super Wash argues, in seven issues, that the trial court erred by granting the City’s motion for partial summary judgment.

II. Legal Analysis

A. Standard of Review

In a summary judgment case, the issue on appeal is whether the movant met his summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.
(footnote: 1)  The burden of proof is on the movant, and all doubts about the existence of a genuine issue of material fact are resolved against the movant.
(footnote: 2)  Therefore, we must view the evidence and its reasonable inferences in the light most favorable to the nonmovant.
(footnote: 3) 

In deciding whether there is a material fact issue precluding summary judgment, all conflicts in the evidence are disregarded and the evidence favorable to the nonmovant is accepted as true.
(footnote: 4)  Evidence that favors the movant's position will not be considered unless it is uncontroverted.
(footnote: 5)
 The summary judgment will be affirmed only if the record establishes that the movant has conclusively proved all essential elements of the movant's cause of action or defense as a matter of law.
(footnote: 6)
 A defendant is entitled to summary judgment if the summary judgment evidence establishes, as a matter of law, that at least one element of a plaintiff’s cause of action cannot be established.
(footnote: 7)  The defendant as movant must present summary judgment evidence that negates an element of the plaintiff’s claim.
(footnote: 8)  Once the defendant produces sufficient evidence to establish the right to summary judgment, the burden shifts to the plaintiff to come forward with competent controverting evidence raising a genuine issue of material fact with regard to the element challenged by the defendant.
(footnote: 9)
 When both parties move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both parties’ summary judgment evidence and determine all questions presented.
(footnote: 10) The reviewing court should 
render
 the judgment that the trial court should have rendered.
(footnote: 11)
B. Standing

In its fifth issue, Super Wash argues that the trial court erred by finding that, as a matter of law, it did not have standing to challenge the validity or enforceability of the Ordinance.  We agree.

Standing pertains to a plaintiff’s justiciable interest in a suit.
(footnote: 12)  To have standing in Texas, the general rule is that a plaintiff must establish that he has an individual interest in a conflict that is distinct from the interest of the general public.
(footnote: 13)  Specifically, a plaintiff has standing if:  (1) he has sustained, or is in immediate danger of sustaining, some direct injury as a result of the complained of wrongful act; (2) there is a direct relationship between the alleged injury and the claim to be adjudicated; (3) the plaintiff has a personal stake in the controversy; (4) the challenged action has caused the plaintiff some injury in fact, either economic, recreational, environmental, or otherwise; and (5) the plaintiff is an appropriate party to assert the public interest in the matter as well as the plaintiff’s own interest.
(footnote: 14)
 In this case, Super Wash has standing to challenge the validity and the City’s enforcement of the Ordinance.
(footnote: 15)  It is settled law that people have a fundamental right to use their property as they wish, provided that the use does not harm others.
(footnote: 16)  The only way this fundamental right can be limited is through the lawful exercise of police power.
(footnote: 17)  The Ordinance, and the City’s enforcement thereof, specifically limits Super Wash’s fundamental right to use its property.  Accordingly, Super Wash has sustained direct injury and it has an individual interest distinct from the public’s interest in the validity and enforceability of the Ordinance.

Super Wash also has standing to seek declaration of the validity of the ordinance under the Declaratory Judgment Act
(footnote: 18) because its rights, status, or other legal relations are affected by the municipal ordinance.
(footnote: 19)  Consequently, the trial court erred to the extent that it held, as a matter of law, that Super Wash did not have standing to challenge the validity and enforceability of the Ordinance.  We sustain Super Wash’s fifth issue to that extent.

C. Zoning

In Super Wash’s first through fourth and sixth issues, it argues that the Ordinance is not valid as a matter of law.  Zoning is an exercise of a municipality’s legislative power.
(footnote: 20)  A zoning ordinance, duly adopted pursuant to Chapter 211 of the Texas Local Government Code, is presumed to be valid, and the burden is on the party seeking to prevent its enforcement to prove that the ordinance is arbitrary or unreasonable.
(footnote: 21)  An amendment to a city’s zoning ordinance is also presumed valid if it is adopted pursuant to the statutory regulations and is not arbitrary or unreasonable.
(footnote: 22)  An ordinance is arbitrary or unreasonable if it bears no substantial relationship to the public health, safety, moral, or general welfare.
(footnote: 23)  The reasonableness of the ordinance is a question of law.
(footnote: 24)
 Additionally, a municipal ordinance may be void as to some of its provisions and valid as to others.
(footnote: 25)  Where the ordinance is severable, so that invalid provisions may be eliminated leaving a valid ordinance, the invalidity of a part will not invalidate the whole.
(footnote: 26)  While courts may, at times, sever invalid portions of ordinances and leave in force the valid portions, they may not add to or redraft the ordinance.
(footnote: 27)  Furthermore, if eliminating the invalid provisions would thwart the intent of the governing body, then the entire ordinance is void.
(footnote: 28)
1. Contract Zoning

Specifically, in Super Wash’s first and second issues, it argues that the fence requirement contained in the Ordinance is invalid contract zoning and an unconstitutional delegation of the City’s zoning authority.  We disagree. Because zoning is a legislative function, zoning power may not be abdicated by contract or bargain.
(footnote: 29)  
Contract zoning
 is a bilateral agreement where the city binds itself to rezone land in return for the landowner’s promise to use or not use his property in a certain manner.
(footnote: 30)  Zoning, however, must be done through the exercise of legislative power rather than by special arrangements with the owner of a particular piece of property.
(footnote: 31)  Just as a city’s resolution or motion to amend an ordinance never enacted will not receive the full force and effect of a law because it bypasses the legislative process,
(footnote: 32) when a city binds itself to enact a requested ordinance, the municipality also acts without legislative power.  Therefore, contract zoning is invalid because the city surrenders its authority to determine proper land use and bypasses the entire legislative process.
(footnote: 33)
 Conditional zoning
, however, occurs when the city unilaterally requires a landowner to accept certain restrictions on his land without a prior commitment to rezone the land as requested.
(footnote: 34)  Because conditional zoning does not involve a promise to rezone that bypasses any procedure required by the Local Government Code,
(footnote: 35) the Texas Constitution, or the United States Constitution, conditional zoning is not invalid per se.
(footnote: 36)  Therefore, conditional zoning is valid if it is not arbitrary or capricious and if it reasonably relates to the public welfare.
(footnote: 37)
 In this case, the City did not make a bilateral agreement with the landowner to rezone the property.  Although the landowner did inform the Zoning Commission and the City Council that he would build a screening fence, this promise did not bind the City, nor did it prevent any legislative procedure. In fact, the procedures required by the Local Government Code, including notice and a hearing, were followed by the City before it enacted the ordinance. Consequently, the ordinance was not the product of invalid contract zoning.

Additionally, the Ordinance does not contain an invalid condition as a matter of law.  The City’s ability to place this condition on the property is within its legislative power because the condition reasonably relates to the public welfare.  Requiring a screening fence prevents access to the residential street, decreasing congestion of traffic and promoting safety.  Accordingly, the trial court did not err to the extent that it held, as a matter of law, the Ordinance was not an invalid contract zoning.  We overrule Super Wash’s first and second issues.

2. Validation
 
Statute

In its sixth issue, Super Wash argues that the trial court erred by holding that the validation statute, as a matter of law, defeats its challenges to the validity and enforceability of the Ordinance.  In its third issue, Super Wash argues that the Ordinance is in “violation of the Zoning Enabling Act” because the condition requiring a fence is not uniform with the conditions on other thoroughfare commercial properties.  And in its fourth issue, Super Wash argues that the automatic reversion clause of the Ordinance is invalid under the Zoning Enabling Act, impermissibly delegating the City’s legislative power.

A validation statute is one enacted for the purpose of curing non-constitutional defects and irregularities in the adoption of zoning ordinances.
(footnote: 38) Validation statutes are remedial and are to be liberally construed.
(footnote: 39)  The validation statute states in part that “[a] governmental act or proceeding of a municipality is conclusively presumed, as of the date it occurred, to be valid and to have occurred in accordance with all applicable statutes and ordinances.”
(footnote: 40) The statute, however, also states that it does not apply to “an act or proceeding that was void at the time it occurred.”
(footnote: 41)  Thus, the statute cannot cure what the legislature could not originally authorize.
(footnote: 42)
a. 
Uniformity

In Super Wash’s third issue, it only challenges the failure to comply with a state statute, not the Ordinance’s constitutionality.  Consequently, although the general rule is that municipalities must strictly comply with the requirements of Chapter 211 of the Texas Local Government Code,
(footnote: 43) as the City points out, we must determine whether the alleged lack of uniformity has been cured by the legislature through the validation statute.

In this case, because Super Wash challenged a statutory defect rather than a constitutional defect in the ordinance, we conclude it was the intention of the legislature to cure this type of irregularity through the validation statute.
(footnote: 44)  Therefore, we do not evaluate whether the ordinance lacked uniformity because this alleged violation of the Zoning Enabling Act was validated.  Furthermore, because requiring a screening fence is within the legislative power to protect the health, safety, and welfare of the residents, the alleged violation was not void at inception.  Consequently, the trial court did not err to the extent that it held, as a matter of law, that the alleged uniformity violation of the Zoning Enabling Act was cured by the validation statute.  We overrule Super Wash’s third issue and overrule its sixth issue in part.

b
. Reversionary Clause

Super Wash argues in its fourth issue that the automatic reversion clause of the Ordinance is an invalid delegation of the City’s legislative power.  We agree.  Because courts use the same rules that are used to construe statutes to construe municipal ordinances, we look first to the plain meaning of the words of the provision.
(footnote: 45)  The reversionary clause of the Ordinance in this case states: “Failing these conditions, there shall occur an automatic revision to ‘MFM’ Multi Family Density zoning classification.”  Although the validation statute may cure statutory defects that are not void at the time it occurred, such as the notice and hearing requirement, this clause was not cured because it was void ab initio.
(footnote: 46)
 The Ordinance in this case amended the original multifamily medium density zoning classification to thoroughfare commercial zoning classification.  A zoning regulation should be amended only when public interest requires the amendment, that is, only when the amendment has a substantial relationship to the health, safety, or general welfare of the community.
(footnote: 47)  The automatic reversion clause was unreasonable and arbitrary at the time the ordinance was enacted because the reversion is unlimited as to time and completely disregards the future needs of the public.
(footnote: 48)  Furthermore, the reversion is invalid because it surrenders future legislative zoning power.
(footnote: 49)
 The facts of this case are distinguishable from those where a special permit is authorized by an ordinance requiring the property owner to comply with the conditions of the ordinance within a specified time, for example, within one year of the enactment of the ordinance, or the property would revert back to its prior classification.
(footnote: 50)  We restrict our holding to the particular ordinance and facts of this case.  Consequently, the trial court erred to the extent that it held, as a matter of law, that the reversionary clause was valid.  We sustain Super Wash’s fourth issue and sustain its sixth issue in part.

Although we hold that the reversionary clause is void, the clause can be severed without thwarting the intent of the City, leaving a valid ordinance.
(footnote: 51)  Accordingly, the reversionary clause stating: “Failing these conditions, there shall occur an automatic revision to ‘MFM’ Multi Family Density zoning classification” is therefore severed from the Ordinance.

D. Estoppel

In Super Wash’s seventh and final issue, it argues that the court erred by granting partial summary judgment because there are issues of material fact regarding whether the City should be estopped from enforcing the ordinance.  We agree.  

Equitable estoppel is based on the principle that if one party by his conduct induces another to act in a particular manner, he should not be allowed to adopt an inconsistent position and thereby cause loss or injury to the other.
(footnote: 52) The linchpin for equitable estoppel is equity-fairness.
(footnote: 53)
 Although the general rule is that when a government is exercising its governmental powers, it is not subject to estoppel, there is an exception to that rule.
(footnote: 54)  Where justice, honesty, and fair dealing require application of estoppel and no governmental function is impaired, estoppel is available against a government.
(footnote: 55)  In order to apply estoppel, the trial court must determine whether the landowner is relying on an authorized act of a city official or employee, whether the case is one in which justice requires estoppel, and whether its application would interfere with the city’s governmental functions.
(footnote: 56)
 In this case, issues of material fact exist regarding Super Wash’s estoppel claim.  First, issues of material fact exist regarding whether the actions of the City building official were authorized.  The building official testified that he reviews the building plans, authorizes issuance of permits, is responsible for anything regarding zoning and site plans, and is also over code enforcement.  He also testified that he did issue a building permit to Super Wash and that he later requested revised plans regarding a wider curb cut and a fence, which Super Wash provided.

Second, Super Wash presented evidence that this is the type of case that requires estoppel.  Super Wash showed that it obtained a building permit and, acting in reliance on the permit, began building.  Further, Super Wash was forty-five percent finished building when the City informed it that the fence would have to be continuous with no curb cut or the City would issue a stop-work order.  Finally, because there are issues of material fact about whether this is the only city ordinance requiring a fence of this type, the City would not automatically be prevented from carrying out governmental functions in the future if estoppel were applied in this case.
(footnote: 57)
 Consequently, because we find genuine issues of material fact regarding Super Wash’s estoppel claim, the trial court erred to the extent that it granted summary judgment disposing of this claim.  We sustain Super Wash’s seventh issue.

III. Conclusion

Having held that Super Wash had standing to challenge the enforcement and the validity of the Ordinance, that the reversionary clause is void and severable, that the ordinance excluding the reversionary clause is valid, and that issues of material fact exist regarding Appellant’s estoppel claim, we affirm the trial court’s judgment in part, reverse and render in part, and reverse and remand in part.

We affirm the portion of the trial court’s judgment that disposes of the contract zoning and lack of uniformity claims.  We reverse and render judgment that Super Wash has standing to challenge the validity and enforceability of the ordinance and that the reversionary clause of the ordinance is void and severed from the remaining valid provisions of the ordinance.  We reverse and remand solely on the estoppel cause of action.

LEE ANN DAUPHINOT

JUSTICE

PANEL B: LIVINGSTON, DAUPHINOT, and HOLMAN, JJ.

DELIVERED:  February 26, 2004

FOOTNOTES
1:
Tex. R. Civ. P.
 166a(c); 
S.W. Elec. Power Co. v. Grant
,
 
73 S.W.3d 211, 215 (Tex. 2002); 
City of Houston v. Clear Creek Basin Auth.
, 589 S.W.2d 671, 678 (Tex. 1979).

2:
S.W. Elec. Power Co.
,
 
73 S.W.3d at 215;
 Rhone-Poulenc
,
 Inc. v. Steel
, 997 S.W.2d 217, 223 (Tex. 1999); 
Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.
, 391 S.W.2d 41, 47 (Tex. 1965).

3:
Great Am.
, 391 S.W.2d at 47.

4:
Rhone-Poulenc
, 997 S.W.2d at 223; 
Harwell v. State Farm Mut. Auto. Ins. Co.
, 896 S.W.2d 170, 173 (Tex. 1995).

5:
Great Am.
, 391 S.W.2d at 47.

6:
Clear Creek Basin
, 589 S.W.2d at 678.

7:
Elliott-Williams Co. v. Diaz
, 9 S.W.3d 801, 803 (Tex. 1999).

8:
Centeq Realty
,
 Inc. v. Siegler
, 899 S.W.2d 195, 197 (Tex. 1995).

9:
Id.

10:
Dow Chem. Co. v. Bright
, 89 S.W.3d 602, 605 (Tex. 2002).

11:
Id
.

12:
See
,
 e.g.
, 
Williams v. Lara
, 52 S.W.3d 171, 178 (Tex. 2001); 
Lorentz v. Dunn
, 112 S.W.3d 176, 178 (Tex. App.—Fort Worth 2003, pet. filed); 
Tex. Dep’t of Transp. v. City of Sunset Valley
, 92 S.W.3d 540, 550 (Tex. App.—Austin 2002, pet. granted) (op. on reh’g);
 El Paso Cmty. Partners v. B & G/Sunrise Joint Venture
,
 
24 S.W.3d 620, 624 (Tex. App.—Austin 2000, no pet.).

13:
Williams
, 52 S.W.3d at 178.

14:
El Paso Cmty. Partners
, 24 S.W.3d at 624; 
Marburger v. Seminole Pipeline Co.
, 957 S.W.2d 82, 89 (Tex. App.—Houston [14th Dist.] 1997, pet. denied).

15:
See
 
Mayhew
 
v. Town of Sunnyvale
, 774 S.W.2d 284, 295–96 (Tex. App.—Dallas 1989, writ denied) 
cert. denied
, 498 U.S. 1087 (1991).

16:
Id
.

17:
Id
.

18:
Tex. Civ. Prac. & Rem. Code Ann.
 § 37.004 (Vernon 1997).

19:
Mayhew
, 774 S.W.2d at 295–96.

20:
See
,
 e.g.
,
 City of Pharr v. Tippitt
, 616 S.W.2d 173, 175 (Tex. 1981); 
City of San Antonio v. Arden Encino Partners
, 
Ltd.
, 103 S.W.3d 627, 630 (Tex. App.—San Antonio 2003, no pet.).

21:
Bd. of Adjustment of San Antonio v. Wende
, 92 S.W.3d 424,  431 (Tex. 2002); 
City of Fort Worth v. Johnson
, 388 S.W.2d 400, 402 (Tex. 1964); 
Tex. Loc. Gov’t Code Ann.
 §§ 211.001–.021 (Vernon 1999 & Supp. 2004).

22:
See Arden Encino Partners
, 103 S.W.3d at 631–32.

23:
See
, 
e.g.
, 
Tippitt
,
 
616 S.W.2d at 176; 
City of Arlington v. City of Fort Worth
, 844 S.W.2d 875, 878 (Tex. App.—Fort Worth 1992, writ denied).

24:
See
,
 e.g.
, 
Tippitt
,
 
616 S.W.2d at 176; 
Arden Encino Partners
, 103 S.W.3d at 630.

25:
City of Fort Worth v. Atlas Enters.
, 311 S.W.2d 922, 924 (Tex. App.—Fort Worth 1958, writ ref’d n.r.e.).

26:
Id
.

27:
City of Willow Park v. Bryant
, 763 S.W.2d 506, 511 (Tex. App.—Fort Worth 1988, no writ).

28:
City of Forney v. Estate of Pinson
, 575 S.W.2d 58, 61 (Tex. Civ. App.—Texarkana 1978, writ ref’d n.r.e.); 
Atlas Enters.
, 311 S.W.2d at 924. 

29:
See
,
 e.g.
, 
City of Arlington
, 844 S.W.2d at 878; 
City of Farmers Branch v. Hawnco
,
 Inc.
, 435 S.W.2d 288, 291 (Tex. Civ. App.—Dallas 1968, writ ref’d n.r.e.).

30:
See
,
 e.g.
, 
Duran v. IDC Bellingham
, 
LLC
, 793 N.E.2d 359, 365–66 (Mass. 2003); 
Old Canton Hills Homeowners Ass’n v. Mayor of Jackson
, 749 So. 2d 54, 57–58 (Miss. 1999); 
Dacy v. Village of Ruidoso
, 845 P.2d 793, 796–97 (N.M. 1992); 
Allred v. City of Raleigh
, 178 S.E.2d 432, 441 (N.C. 1971).

31:
See
,
 e.g.
, 
City of Arlington
, 844 S.W.2d at 878; 
City of Farmers Branch
, 435 S.W.2d at 291; 
Old Canton Hills Homeowners Ass’n
, 749 So. 2d at 57–58; 
Dacy
, 845 P.2d at 797. 

32:
See
 
City of Hutchins v. Prasifka
, 450 S.W.2d 829, 833 (Tex. 1970).

33:
See
,
 e.g.
, 
Old Canton Hills Homeowners Ass’n
, 749 So. 2d at 57; 
Dacy
, 845 P.2d at 797.

34:
See generally
, 
John Mixon, Texas Municipal Zoning Law 
§ 7.112 (3d ed. 1999); 8 
Eugene McQuillin, Municipal Corporations 
§ 25.93.10 (3d ed. 2000).

35:
See
 
Tex. Loc. Gov’t Code Ann.
 §§ 211.001–.021.

36:
See
 
Dacy
, 845 P.2d at 797; 
see also Prasifka
, 450 S.W.2d at 833.

37:
See Arden Encino Partners
, 103 S.W.3d at 631–32.

38:
See
,
 e.g.
,
 Prasifka
, 450 S.W.2d at 833; 
West End Pink
,
 Ltd. v. City of Irving
, 22 S.W.3d 5, 8 (Tex. App.—Dallas 1999, pet. denied); 
Kinkaid School
,
 Inc. v. McCarthy
, 833 S.W.2d 226, 231 (Tex.
 
App.—Houston [1st Dist.] 1992, no writ);
 Leach v. City of North Richland Hills
, 627 S.W.2d 854, 858 (Tex. App.—Fort Worth 1982, no writ).

39:
West End Pink
, 22 S.W.3d at 8;
 
Murmur Corp. v. Bd. of Adjustment
, 718 S.W.2d 790, 793 (Tex. App.—Dallas 1986, writ ref’d n.r.e.); 
see
,
 e.g.
, 
Leach
, 627 S.W.2d at 858.

40:
Tex. Loc. Gov’t Code Ann.
 § 51.003(a) (Vernon Supp. 2004).

41:
Id
. § 51.003(b)(1).

42:
West End Pink
, 22 S.W.3d at 8.

43:
See Truman v. Irwin
, 488 S.W.2d 907, 908 (Tex. Civ. App.—Fort Worth 1972, no writ);
 Appolo Dev.
,
 Inc. v. City of Garland
, 476 S.W.2d 365, 367 (Tex. Civ. App.—Dallas 1972, writ ref’d n.r.e.).

44:
Mayhew
, 774 S.W.2d at 296.

45:
Wende
, 92 S.W.3d at 430.

46:
See
 
Tex. Loc. Gov’t Code Ann.
 § 51.003(b)(1); 
West End Pink
, 22 S.W.3d at 8; 
Murmur
, 718 S.W.2d at 793.

47:
See Tippitt
, 616 S.W.2d at 177;
 McWhorter v. City of Winnsboro
, 525 S.W.2d 701, 703 (Tex. Civ. App.—Tyler 1975, writ ref’d n.r.e.).

48:
See Gay Inv. Co. v. Tex. Turnpike Auth.
, 510 S.W.2d 147, 150 (Tex. Civ. App.—Dallas 1974, writ ref’d n.r.e.).

49:
See City of Corpus Christi v. Bayfront Assocs.
,
 Ltd.
, 814 S.W.2d 98, 107 (Tex. App.—Corpus Christi 1991, writ denied); 
Fid
.
 Land & Trust Co. of Tex. v. City of W. Univ. Place
, 496 S.W.2d 116, 117 (Tex. Civ. App.—Houston [14th Dist.] 1973, writ ref’d n.r.e.).

50:
See
,
 e.g.
, 
Sherwood Lanes
,
 Inc. v. City of San Angelo
, 511 S.W.2d 597, 598–99 (Tex. Civ. App.—Austin 1974, writ ref’d n.r.e.); 
see also 
Mixon, 
supra
, § 7.112.

51:
See
 
Atlas Enters.
, 311 S.W.2d at 924.

52:
Fabrique
,
 Inc. v. Corman
, 796 S.W.2d 790, 792 (Tex. App.—Dallas 1990), 
writ denied
, 806 S.W.2d 801 (Tex. 1991); 
Mobil Oil Corp. v. Frederick
, 615 S.W.2d 323, 325 (Tex. Civ. App.—Fort Worth 1981), 
aff’d in part
,
 rev’d in part on other grounds
, 621 S.W.2d 595 (Tex. 1981).

53:
Tex. Enters.
,
 Inc. v. Arnold Oil Co.
, 59 S.W.3d 244, 249 (Tex. App. —San Antonio 2001, no pet.).

54:
See
,
 e.g.
, 
Prasifka
, 450 S.W.2d at 835–36; 
Maguire Oil Co. v. City of Houston
, 69 S.W.3d 350, 365 (Tex. App.—Texarkana 2002, pet. 
denied);
 City of Dallas v. Rosenthal
, 239 S.W.2d 636, 645 (Tex. App.—Dallas 1951, writ ref’d n.r.e.).

55:
See
,
 e.g.
, 
Roberts v. Haltom City
, 543 S.W.2d 75, 80 (Tex. 1976).

56:
See
,
 e.g.
, 
Maguire Oil Co.
, 69 S.W.3d at 368.

57:
See
,
 e.g.
, 
id
.